EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico  Recurrido  v.  Víctor Arzuaga Rivera Félix de Jesús Mendoza  Peticionarios | Certiorari  2003 TSPR 157  160 DPR \_\_\_\_ |
|---|---|

Número del Caso: CC-2002-341

Fecha: 4 de noviembre de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI

Juez Ponente:
                    Hon. Carlos Soler Aquino

Abogados de la Parte Peticionaria:
                    Lcdo. Carlos T. Rodríguez Cruz
                    Lcdo. Pedro A. Roldós Matos

Oficina del Procurador General:
                    Lcda. Rose Mary Corchado Lorent
                    Procuradora General Auxiliar

Materia: Arts. 262, 83, 4.10 y 4.04, Asesinato en Primer Grado,
         Conspiración y L.A.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

        v.                    CC-2002-341      CERTIORARI

Víctor Arzuaga Rivera
Félix de Jesús Mendoza

    Peticionarios


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ PRESIDENTE INTERINO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 4 de noviembre de 2003

¿Tiene derecho un imputado de delito a que el ministerio público le provea copia de la declaración jurada de un testigo de cargo, antes de que dicho testigo haya declarado en alguna de las etapas del procedimiento penal, sólo porque se trate de un co-autor al que el ministerio fiscal ha concedido inmunidad? ¿Constituye una violación al debido proceso de ley la no concesión en estas circunstancias --sin más-- de dicha declaración jurada? Contestamos ambas interrogantes en la negativa. Veamos por qué.

I

Por hechos alegadamente acaecidos el 7 de julio de 2001, el ministerio público autorizó la presentación de varias denuncias contra los aquí peticionarios, Víctor Arzuaga Rivera y Félix de Jesús Mendoza, ante la Sala Superior de Caguas del Tribunal de Primera Instancia, imputándoles la comisión de los delitos de asesinato en primer grado,[1] conspiración[2] y varias infracciones a la Ley de Armas de Puerto Rico.[3] El día de la vista para la determinación de causa probable para arresto declararon bajo juramento los testigos de cargo, Ossirys Castro Rivas y Migdalia Cuevas Rosario, además de los agentes José L. González, Alex López, Ramón Pérez y José Rivas. Tras examinar los referidos testimonios, la juez municipal que presidió la vista determinó causa probable para arresto en todos los delitos imputados.

Luego de varias suspensiones, el 5 de octubre de 2001, se llevó a cabo la vista preliminar en cuanto a ambos imputados, determinándose causa probable para acusar con relación a todos los delitos. Esta vez declararon como testigos de cargo la señora Migdalia Cuevas Rosado, quien era esposa del occiso y figura como testigo ocular de los

---

[1] Artículo 83 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4002.

[2] Artículo 262 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4523.

[3] Cuatro cargos por el Artículo 4.04 de la Ley de Armas y uno por el Artículo 4.10. 25 L.P.R.A. secs. 458(c) y 458(i) respectivamente.

hechos, y los agentes Ramón Pérez y José González. Estos últimos fueron incluidos en el listado de los testigos de cargo que el ministerio fiscal hiciera al presentar las correspondientes denuncias. También figuraban como testigos la señora María S. Conte (patóloga forense del Instituto de Ciencias Forenses), la señora Carmen S. Sualiveras Ortiz (especialista en armas de fuego del Instituto de Ciencias Forenses) y el agente Wally Torres.

A pocos días de presentados los correspondientes pliegos acusatorios, el ministerio público presentó un escrito titulado "Moción Solicitando Inclusión de Testigos", mediante el cual anunció como testigo de cargo a William Figueroa Agosto. Éste había sido acusado por los mismos hechos y delitos que se le imputaron a los peticionarios y había recibido inmunidad parcial a cambio de su testimonio.[4] Los representantes legales de los aquí peticionarios, Víctor Arzuaga Rivera y Félix de Jesús Mendoza, se comunicaron con el fiscal a cargo del caso, solicitándole copia de la declaración jurada prestada por este testigo.

A pesar de que inicialmente el ministerio público verbalmente accedió a tal solicitud, posteriormente, y en

---

[4] A tenor con el acuerdo de inmunidad pactado, el delito de asesinato en primer grado sería reclasificado a uno de homicidio y el acusado sería referido al programa de probatoria regular. Además, se solicitaría el archivo de los delitos relacionados con la Ley de Armas, acordándose que éstos no serían considerados al concederle a Figueroa Agosto los beneficios del régimen de libertad a prueba y que el ministerio público no se opondría a que el convicto cumpliera su probatoria en alguno de los estados de los Estados Unidos.

corte abierta, el fiscal expresó que deseaba que la defensa expusiera su requerimiento "por escrito" para conocer los fundamentos en que sustentaban su solicitud. Ese mismo día la juez que presidía los procedimientos ordenó la entrega de la declaración jurada de Figueroa Agosto, al señalar que la misma era necesaria para que, en su día, la defensa pudiera contrainterrogar adecuadamente al testigo.

Insatisfecho con tal proceder, el ministerio público solicitó reconsideración alegando, en síntesis, que la orden emitida por el foro primario excedía lo dispuesto en la Regla 95 de las de Procedimiento Civil, 34 L.P.R.A. Ap. II, R. 95, y su jurisprudencia interpretativa. El tribunal de instancia se negó a reconsiderar, reiterándose en que el ministerio público debía entregar la declaración jurada del testigo William Figueroa Agosto. Inconforme, el Procurador General acudió ante el Tribunal de Circuito de Apelaciones mediante recurso de certiorari y moción en auxilio de jurisdicción. Tras ordenar la paralización de los procedimientos, el foro apelativo intermedio dictó sentencia en la que revocó la determinación emitida por el Tribunal de Primera Instancia. Al así resolver, y citando lo dispuesto en la Regla 95 de las de Procedimiento Criminal, ante, expresó que los acusados no tenían derecho a obtener copia de la declaración jurada de este testigo ya que éste no había declarado en ninguna de las instancias iniciales del proceso. Según manifestó, en circunstancias como las del presente caso, el imputado tiene que esperar a que el

testigo se siente a declarar en el juicio en su fondo para poder obtener su declaración jurada.

Insatisfechos con la actuación del tribunal apelativo, los peticionarios acudieron --vía *certiorari*-- ante este Tribunal. Alegan que procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones debido a que dicho foro incidió:

> ... al ni tan siquiera determinar y/o evaluar si bajo los hechos particulares del presente caso procede el reclamo hecho por la defensa, sustentado en el debido proceso de ley, para que se le entregue copia de la declaración jurada del testigo co-autor.

> ... al no distinguir que los hechos del presente caso eran los idóneos para acceder al reclamo de la defensa, bajo el debido proceso de ley, de que se le ordene al ministerio público a entregar copia del testigo co-autor con inmunidad aunque éste no haya declarado en la vista preliminar.

> ... al revocar la determinación del Tribunal de Primera Instancia.

El 15 de mayo de 2002 expedimos el recurso. Contando con la comparecencia de las partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.


II

Nuestro sistema de justicia criminal reconoce el derecho de todo acusado a preparar adecuadamente su defensa y a obtener evidencia en su favor. Pueblo v. Arocho Soto, 137 D.P.R. 762, 766 (1994). Reiterando esta máxima este Tribunal ha expresado que "[e]l derecho fundamental de un acusado en [un] proceso criminal lleva consigo el derecho a

informarse debidamente en la preparación de su defensa."
Hoyos Gómez v. Tribunal Superior, 90 D.P.R. 201, 204 (1964).
Como es sabido, el vehículo procesal que reconocen nuestras
Reglas para obtener esta información es el descubrimiento de
prueba. Sobre este particular, y en reiteradas ocasiones,
hemos expresado que el derecho a descubrimiento de prueba es
consustancial al derecho de todo acusado a defenderse en un
proceso criminal en su contra. *Ibid*. Pueblo v. Santa Cruz,
res. el 22 de septiembre de 1999, 99 T.S.P.R. 144, Pueblo v.
Echevarría Rodríguez I, 128 D.P.R. 299, 324 (1991); Pueblo
v. Rodríguez Sánchez, 109 D.P.R. 243 (1979); Pueblo v.
Tribunal Superior, 102 D.P.R. 470 (1970); Hoyos Gómez v.
Tribunal Superior, ante.

Ahora bien, es importante advertir que este derecho a
descubrimiento de prueba a favor del acusado, naturalmente,
no es absoluto. Pueblo v. Arocho Soto, ante; Pueblo v.
Rodríguez Aponte, 116 D.P.R. 653, 668 (1985); Pueblo v.
Dones Arroyo, 106 D.P.R. 303, 314 (1977). El mismo está
limitado por lo dispuesto en la Regla 95 de las de
Procedimiento Criminal, ante, la cual, según hemos resuelto,
constituye una barrera estatutaria contra las llamadas
"expediciones de pesca" en los archivos de fiscalía. Pueblo
v. Echevarría Rodríguez I, ante; Pueblo v. Rodríguez Aponte,
ante, a la pág. 669; Pueblo v. Romero Rodríguez, 112 D.P.R.
437, 440 (1982); Pueblo v. Rodríguez Sánchez, ante, a las
págs. 246-49.

En lo pertinente al asunto que hoy nos ocupa la referida Regla 95, en su Sección (a)(2), dispone que, previa moción del acusado —sometida en cualquier momento después de haberse presentado la acusación o denuncia— el tribunal ordenará al fiscal el descubrimiento de "cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el ministerio fiscal."[5] (énfasis suplido). Del propio texto de la Regla transcrita se desprende que para que surja la obligación del ministerio fiscal de descubrir las declaraciones juradas de los testigos de cargo es necesario que estén presentes dos

_____

[5] Esta regla dispone, además, que, previa moción del acusado, el tribunal deberá ordenar al ministerio fiscal que permita a la defensa inspeccionar, copiar o fotocopiar material o información que esté en posesión, custodia o control del ministerio fiscal. Específicamente deberá descubrir:
. . . .
(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.
(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado.

requisitos básicos: (i) que el acusado solicite las mismas luego de presentado el pliego acusatorio y (ii) que los testigos cuyas declaraciones se solicitan hayan testificado en alguna de las etapas del procedimiento o que hayan sido renunciados por el ministerio público.[6]

Por otro lado, el Inciso (c) de la Regla 23 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.23, provee para que el acusado pueda obtener las declaraciones juradas de los testigos de cargo antes de que el ministerio público haya presentado el pliego acusatorio; esto es, en la etapa de la vista preliminar. Sobre este particular la citada Regla 23 establece, en lo aquí pertinente, que, al ser requerido para ello, el fiscal deberá poner a disposición de la defensa las declaraciones juradas de los testigos de cargo que hayan declarado en la etapa de vista preliminar.[7]

---

[6] Véase: Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. III, pág. 320.

[7] La Regla especifica que se trata de las declaraciones que el ministerio público "tuviere en su poder". En Pueblo v. Rivera Rodríguez, 138 D.P.R. 138, 144-45 (1995), este Tribunal, interpretando dicha expresión, resolvió que la obligación de entregar las declaraciones juradas de los testigos de cargo que declaren en la vista preliminar surge siempre que las mismas estén bajo la posesión directa o constructiva del ministerio público. Según se expresó, ello implica que el ministerio público tendrá que entregar "tanto las declaraciones que estén bajo su control o tenencia física en su oficina o lugar del trabajo o las que él conozca que se encuentran en otra dependencia..., como las que razonablemente se pueda considerar que estén bajo su control indirecto y que él no sólo tenga conocimiento de su existencia sino que también pueda obtener." (énfasis suplido). Asimismo sostuvimos que "si se acepta o se demuestra que el Ministerio Público tomó declaraciones juradas del testigo de cargo presentado en la vista

(Continúa...)

En ocasión de interpretar la citada Regla 23, en Pueblo v. Ortiz Rodríguez, res. el 8 de octubre de 1999, 99 T.S.P.R. 150, señalamos que la obligación que se le impone al ministerio público de descubrir las declaraciones juradas de sus testigos, en esta etapa de los procedimientos, tiene el propósito de salvaguardar el derecho del acusado a contrainterrogar a los testigos que se presentan en su contra. Según hemos expresado, ello permite que el acusado tenga la oportunidad de "carearse con los testigos de cargo" mediante la realización de un contrainterrogatorio efectivo y de impugnar, en esa misma vista, la credibilidad del declarante. Pueblo v. Rivera Rodríguez, 138 D.P.R. 138, 144 (1995). Este derecho se activa tan pronto como finaliza el examen directo y antes de comenzar el contrainterrogatorio.[8] Véase: Pueblo v. Rodríguez López res. el 14 de diciembre de 2001, 2001 T.S.P.R. 172; Pueblo v. Ortiz Vega, ante; Pueblo v. Rivera Rodríguez, ante, a la pág. 144; Pueblo v. Ribas, 83 D.P.R. 386, 391-392 (1967).

---

preliminar relacionadas con los hechos del delito imputado, es también razonable que se presuma que el Estado ha continuado 'en poder' de éstas." "Para rebatir esta presunción, el Fiscal tiene la obligación de demostrar -- mediante prueba-- que las declaraciones no están en su poder y de acreditar las gestiones que ha realizado para localizar y producir el documento." *Ibid*.

[8] Así se desprende de lo dispuesto en la Regla 95 de las de Procedimiento Criminal, la cual, en lo aquí pertinente, establece que: "[a]l ser requerido para ello el fiscal pondrá a disposición de la persona las declaraciones juradas que tuviere en su poder de los testigos que haya puesto a declarar en la vista." (énfasis suplido).

En resumen, hemos examinado dos instancias en las que se activa el derecho del imputado a recibir las declaraciones juradas en poder del ministerio fiscal. La primera de ellas es corolario del derecho del acusado a contrainterrogar a los testigos en su contra y ocurre antes de la radicación del pliego acusatorio, cuando los testigos se sientan a declarar en la etapa de vista preliminar. La segunda surge tan pronto como se presenta el pliego acusatorio, momento en el cual el acusado podrá solicitar las declaraciones de los testigos que se sentaron a declarar en la vista adversativa de determinación de causa probable para arresto[9] o en la vista preliminar. Sin embargo, si se trata de testigos que el fiscal no ha sentado a declarar en ninguna de las etapas previas a la presentación del pliego acusatorio, entonces, y como norma general, el imputado tendrá que esperar hasta el acto del juicio para obtener estas declaraciones; las cuales podrá solicitar una vez finalice el examen directo y antes de que dé inicio el contrainterrogatorio. Ernesto L. Chiesa Aponte, *Procedimiento Penal*, 68 REV. JUR. U.P.R. 241, 250 (1999).

---

[9] Aclaramos que debe tratarse de una vista adversativa pues, según expresamos en Pueblo v. Rodríguez López, ante, para que el acusado tenga derecho a obtener las declaraciones juradas de los testigos que hayan declarado en la vista de determinación de causa probable para arresto, una vez se presenta el pliego acusatorio, es necesario que la vista se haya celebrado siguiendo el método más formal que reconocen las Reglas de Procedimiento Criminal; esto es, mediante el examen de testigos y en presencia del acusado y de su abogado.

La tercera instancia en que surge el derecho del acusado a obtener las declaraciones de los testigos de cargo ocurre a la terminación de la presentación de la prueba del ministerio fiscal, cuando éste renuncia a alguno de los testigos previamente anunciados por tratarse de prueba acumulativa. En este caso el fiscal, luego de poner a estos testigos a disposición de la defensa para que los utilice, o no, conforme a su mejor criterio, deberá entregarle a la defensa copia, si alguna, de la declaración jurada prestada por los testigos que han renunciado. De esta forma se evita que entre en vigor la presunción establecida en la Ley de Evidencia, Regla 16(5) de Evidencia, 32 L.P.R.A. Ap. IV, a los efectos de que, de haber declarado este testigo, se consideraría que su testimonio le hubiese sido adverso al ministerio fiscal. Pueblo v. Quiñónez Ramos, 99 D.P.R. 1, 4 (1970).

III

Las instancias discutidas en el acápite que antecede son las únicas provistas por nuestras Reglas de Procedimiento Criminal relativas al derecho de un acusado a obtener las declaraciones juradas de los testigos de cargo. Sin embargo, y reconociendo que el descubrimiento de prueba a favor del acusado tiene una base más amplia, cimentada en la Carta de Derechos de nuestra Constitución, este Tribunal, siguiendo la casuística del Tribunal Supremo federal, ha establecido que, bajo ciertas y determinadas condiciones, un

acusado pueda obtener las declaraciones juradas de los testigos de cargo, sin importar si están o no presentes las circunstancias establecidas en las citadas Reglas. Pueblo v. Rodríguez Sánchez, ante, a la pág. 246; Pueblo v. Hernández García, 102 D.P.R. 506, 511 (1974); Brady v. Maryland, 373 U.S. 83 (1963); United States v. Agurs, 427 U.S. 97 (1976). La "llave" que da acceso a esta posibilidad es una sola y se llama "debido proceso de ley". *Ibid*.

A tono con lo anterior, en Pueblo v. Rodríguez López, ante, expresamos que para que la defensa pueda tener acceso a las declaraciones juradas de los testigos de cargo, sin que esté presente ninguna de las circunstancias establecidas en las Reglas de Procedimiento Criminal, es necesario que el acusado sustente su solicitud en el debido proceso de ley. Ello significa que la defensa tendrá que demostrar que, al negarse a descubrir la declaración jurada de que se trata, el Estado está faltando a su obligación de garantizarle al acusado un procedimiento justo y equitativo.

Ahora bien, lo anterior no puede interpretarse en el sentido de que este Tribunal ha abierto las puertas para que la defensa pueda realizar lo que ha sido denominado como "expediciones de pesca" en los archivos de fiscalía. Las Reglas que gobiernan el derecho al descubrimiento de prueba en casos criminales no pueden ser obviadas con la sola mención del derecho del acusado a un debido proceso de ley. La jurisprudencia en torno a este tema es clara: no existe un derecho constitucional a descubrir prueba antes del

juicio. <u>Weatherford</u> v. <u>Bursey</u>, 429 U.S. 545, 559 (1977); Véase, además: <u>McDole</u> v. <u>State</u>, 339 Ark. 391 (1999); <u>New York</u> v. <u>Gentile</u>, 669 N.Y.S.2d 854 (1998); <u>Williams</u> v. <u>Commonwealth</u>, 16 Va.App. 928, 434 S.E.2d 343 (1993); <u>McMullin</u> v. <u>State</u>, 442 So.2d 155 (Ala.App. 1983); Wayne R. LaFave et als., <u>Criminal Procedure</u>, Minnessotta, West Group, 1999, 2da Ed., pág. 883; Charles Alan Wright, <u>Federal Practice and Procedure: Criminal</u>, Minnessotta, West Group, 2000, 3ra Ed., pág. 71. La <u>única excepción</u> a esta norma —en lo que respecta al asunto específico de las declaraciones de los testigos de cargo— surge ante la existencia de <u>evidencia exculpatoria</u>,[10] circunstancia que, como veremos, es la <u>única</u> que activa la protección constitucional del debido proceso de ley.

IV

Sabido es que la cláusula del debido proceso de ley ha sido denominada como la "disposición matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano."[11] En su vertiente

---

[10] El término "evidencia exculpatoria" ha sido definido por este Tribunal como "toda aquella [evidencia] que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo, irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal." <u>Pueblo</u> v. <u>Echevarría Rodríguez</u>, ante, a la pág. 333 (citando a <u>Brady</u> v. <u>Maryland</u>, ante, y <u>Moore</u> v. <u>Illinois</u>, 408 U.S. 786, 794-95 (1972)).

[11] <u>Pueblo</u> v. <u>Vega Rosario</u>, 148 D.P.R. 980, 988 (1999)(citando a Olga Elena Resumil, <u>Derecho Procesal Penal</u>, Oxford, Equity Publishing Co., 1990, T. 1, pág. 26.

procesal esta cláusula ha sido considerada como "la garantía fundamental que tiene un ciudadano ante una investigación y proceso criminal." Ernesto Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, ante, a la pág. 23. Su protección es un arma ofensiva y defensiva: por un lado le impide al Estado ciertos métodos de investigación y procesamiento y, por el otro, proporciona al acusado armas ofensivas, como el derecho a cierto descubrimiento de prueba y a presentar cierta evidencia a su favor. Ibid. a la pág. 25.

En lo que respecta al descubrimiento de prueba a favor del acusado, y refiriéndonos específicamente al asunto de las declaraciones juradas de los testigos de cargo, es de advertir que esta cláusula juega un papel fundamental en la medida en que obliga al Estado a proveerle al acusado evidencia que de otro modo no tendría que ser revelada o, por lo menos, podría ser mantenida fuera del conocimiento del imputado hasta etapas ulteriores del procedimiento criminal. Ello ocurre siempre que el Estado tenga en su poder cualquier tipo de declaración que contenga evidencia relevante a la inocencia del acusado.

Refiriéndonos a las circunstancias en que se activa la protección del debido proceso de ley ante una solicitud de descubrimiento de prueba que no cumple con los criterios establecidos en las Reglas de Procedimiento Criminal, en Pueblo v. Hernández García, ante, adoptando la normativa establecida por el Tribunal Supremo federal en Brady v.

Maryland, ante, pautamos la norma a los efectos de que el ministerio público está obligado a descubrir cualquier tipo de evidencia que sea relevante a la inocencia o castigo del acusado, independientemente de que la evidencia de que se trate cumpla o no con los criterios establecidos en las Reglas de Procedimiento Criminal. Según sostuvimos en el precitado caso, el ministerio fiscal incurre en una violación al debido proceso de ley siempre que oculta, suprime u omite evidencia de este tipo.[12]

Del mismo modo, en Pueblo v. Rodríguez Sánchez, ante, nos adherimos a la doctrina de Brady v. Maryland, ante y United States v. Agurs, 427 U.S. 97 (1976), al puntualizar que "es responsabilidad del Estado, en su obligación de proveer un juicio justo bajo la cláusula de debido proceso de ley, y aun sin mediar solicitud de la defensa, revelar cualquier evidencia exonerante en su poder o vicios de falsedad en su prueba que de permanecer ocultos e ignorados sofocarían la verdad en la sala de justicia."[13] (énfasis

---

[12] En este caso, sin embargo, nos negamos a adoptar las expresiones del Juez Fortas en la opinión concurrente emitida por éste en Giles v. Maryland, 386 U.S. 66 (1977), a los efectos de que existe un deber afirmativo del fiscal de descubrir toda evidencia que no sea meramente repetitiva o sin importancia para la defensa en la preparación de su caso.

[13] Adviértase que no limitamos los pronunciamiento esbozados en este caso a lo relativo a "evidencia exculpatoria", sino que también hicimos referencia a los "vicios de falsedad" de la prueba del ministerio público, al referirnos a la obligación del fiscal de revelar prueba favorable al acusado. Ello a tenor con lo resuelto por el Tribunal Supremo de los Estados Unidos —hace más de 67 años— a los efectos de que el uso deliberado de falso testimonio por

(Continúa...)

suplido). Más adelante, en Pueblo v. Cancel Hernández, 111 D.P.R. 625, 628 (1981), reafirmamos la obligación del ministerio público de revelar toda prueba exculpatoria. Según sostuvimos, tal obligación debe ser cumplida sin necesidad de que medie una previa solicitud por parte de la defensa. *Ibid.*

Asimismo, en Pueblo v. Romero Rodríguez, ante, a la pág. 440, expresamos que el fiscal tiene la obligación de revelar prueba favorable al acusado en virtud del derecho que le asiste a un debido proceso de ley. De igual forma, en Pueblo v. Echevarría Rodríguez I, ante, a la pág. 376,

_____

parte del ministerio fiscal constituye una violación al debido proceso de ley del acusado. Mooney v. Holohan, 294 U.S. 103 (1935). Véase, además: Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, ante, a la pág. 28.

A tono con lo anterior, este Tribunal ha sostenido que "una convicción obtenida a base del testimonio perjuro es esencialmente injusta y debe ser descartada si hay fundamento suficiente para determinar que el falso testimonio pudo haber afectado el veredicto rendido." Pueblo v. Echevarría Rodríguez I, ante, a la pág. 335 (citas omitidas). En este mismo caso señalamos que el uso de testimonio perjuro constituye una violación al debido proceso de ley, ya sea porque el ministerio fiscal conozca de la falsedad o que el Estado, sin haberlo estimulado, permita su presentación aun conociendo de la incorrección del mismo. *Ibid.* (citas omitidas).

Esta norma ha sido extendida no sólo a evidencia relacionada a los elementos del delito, sino que también ha sido aplicada a casos en que la falsedad del testimonio incide en la credibilidad de algún testigo de cargo. Jacobs v. Scott, 513 U.S. 1067 (1995); Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959). Además, se ha resuelto que la obligación de descubrir la verdad o corregir testimonio perjuro no recae exclusivamente en el fiscal que interroga, sino que constituye un deber del ministerio público en general. Giglio v. United States, ante.

señalamos que "[p]or imperativo del debido proceso de ley, el Ministerio Fiscal tiene el deber de revelar cualquier evidencia exculpatoria, testimonio perjuro o indicios de falsedad en la prueba que tenga en su poder."[14]

De la jurisprudencia citada se colige que el ministerio fiscal tiene la obligación legal de revelarle a un imputado de delito cualquier tipo de evidencia exculpatoria que tenga en su poder o cualquier vicio de falsedad que pueda afectar su prueba.[15] Esta obligación ha sido recogida en el Inciso (b) de la Regla 95 de las de Procedimiento Criminal, ante, al disponerse que "[e]l Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder."

Es importante recalcar que esta obligación no depende de que exista o no una previa solicitud por parte de la defensa o que se trate de una solicitud específica o general. Si el ministerio fiscal tiene en su poder prueba exculpatoria, o evidencia relevante a la inocencia o castigo del acusado, tendrá que entregarla a la defensa pues, al no

---

[14] En torno a este mismo tema, en Pueblo v. Hernández Santana, 138 D.P.R. 577, 588 (1995), denominamos como una "situación grave y perjudicial" que conlleva la revocación de la convicción y la celebración de un nuevo juicio el hecho de que el ministerio fiscal "escond[a] o no descubr[a] prueba exculpatoria" en clara violación al debido proceso de ley del acusado.

[15] Esto incluye evidencia que pueda ser útil para impugnar la credibilidad de un testigo de cargo, pues, según se ha resuelto, la misma podría representar "evidencia favorable al acusado", que de ser revelada, y efectivamente utilizada por la defensa, signifique la diferencia entre su convicción o su absolución. Giglio v. United States, ante.

hacerlo, incurre en una violación al debido proceso de ley;[16] ello independientemente de la buena o mala fe que haya tenido el ministerio público al así actuar. Brady v. Maryland, ante; Giles v. Maryland, 386 U.S. 66 (1967); Moore v. Illinois, 408 U.S. 786 (1972); U.S. v. Agurs, ante. Ciertamente, no es la intención del fiscal lo que cuenta para determinar si se ha ofendido el debido proceso de ley, sino la posibilidad de daño al acusado. Pueblo v. Hernández García, ante, a las págs. 508-09 (citando a Giglio v. United States, ante.

Dicho de otra forma, el ministerio fiscal tiene el deber de revelar cualquier indicio de falso testimonio y de descubrir evidencia exculpatoria cuando tal falsedad o carácter exculpatorio es, o debió ser, conocida por éste. Véase: Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, ante, a la pág. 32. Ello, naturalmente, sin necesidad de una previa solicitud

---

[16] El asunto de la violación al debido proceso de ley puede suscitarse en dos contextos principales; a saber: (i) durante alguna de las etapas del proceso criminal o (ii) luego de finalizado el juicio en su fondo. El Tribunal Supremo de los Estados Unidos ha explicado este asunto del siguiente modo:

> First, in advance of trial, and perhaps during the course of a trial as well, the prosecutor must decide what, if anything, he should voluntarily submit to defense counsel. Second, after trial a judge may be required to decide whether a nondisclosure deprived the defendant of his right to due process. Logically the same standard must apply at both times. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

por parte de la defensa y sin importar si las Reglas de Procedimiento Criminal proveen o no para tal descubrimiento en la etapa específica de los procedimientos en que se encuentren. El no hacerlo podría acarrear la <u>revocación de la convicción</u> y la celebración de un nuevo juicio. Ello dependerá de la relevancia y materialidad de la evidencia suprimida; esto es, si la supresión de la evidencia de que se trata socava la confianza en el resultado del juicio. Esto deberá ser analizado a base de un estándar de "probabilidad razonable".[17] <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 434 (1995); <u>United States</u> v. <u>Bagley</u>, 473 U.S. 667, 678 (1985).


V

Ya hemos señalado que nuestras Reglas de Procedimiento Criminal sólo reconocen al imputado acceso a las declaraciones juradas de los testigos de cargo en la vista preliminar misma o después de radicada la acusación, siempre que los testigos hayan declarado en la vista de causa

---

[17] Con relación a la "relevancia" de la evidencia hemos señalado que la misma "se encuentra condicionada a la impresión derivada por el foro apelativo de que la prueba exculpatoria suprimida, con una razonable probabilidad, habría alterado el veredicto o el castigo impuesto de haber sido presentada al juzgador de los hechos." <u>Pueblo</u> v. <u>Echevarría Rodríguez I</u>, ante, a la pág. 333 (citas omitidas). Ello significa que no se trata solamente de si el fiscal ha ocultado evidencia exculpatoria; la calidad y el peso de la misma es elemento tan o más importante que su propia existencia si tiene suficiente relevancia como para levantar una razonable probabilidad de que el veredicto o la pena pudieran haber sido distintos si se le hubiese considerado. *Ibid*. (citas omitidas).

probable para arresto, en la vista preliminar o en el juicio o que hayan sido renunciados por el ministerio fiscal. Sin embargo, al aplicar a este contexto lo dispuesto en el acápite que antecede, resulta evidente que la referida normativa debe ceder ante declaraciones que contengan evidencia exculpatoria o información que pueda resultar relevante a la inocencia o castigo del acusado.

En tales casos el ministerio público debe poner a disposición de la defensa, sin necesidad de una previa solicitud de la defensa, y sin importar si el testigo ha declarado o no en alguna de las etapas del procedimiento criminal, cualquier declaración que contenga evidencia exculpatoria o que ponga al descubierto indicios de falsedad en la prueba del Estado. Además, el fiscal tiene la obligación de descubrir aquellas declaraciones que resulten beneficiosas al acusado en la medida en que éstas contengan información que puedan afectar la credibilidad de alguno de los testigos de cargo. Como señaláramos, esta obligación surge del derecho que le asiste a todo acusado a gozar de un juicio justo bajo la cláusula del debido proceso de ley.

En esta clase de situaciones, el imputado de delito podrá solicitar del tribunal que le ordene al fiscal que descubra dicha prueba, sin importar si el testigo ha declarado en alguna de las etapas preliminares del proceso.[18] Ello no obstante, al solicitar la misma el acusado tendrá

---

[18] Véase Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, ante, a la pág. 43.

que demostrar afirmativamente que la declaración jurada de que se trata, con toda probabilidad, contiene evidencia exculpatoria o relevante a su inocencia o castigo. Pueblo v. Romero Rodríguez, ante, a la pág. 440. Ello a tenor con lo expresado por este Tribunal a los efectos de que cuando la defensa solicita que el fiscal ponga a su disposición la declaración de alguno de sus testigos de cargo --bajo el argumento de que la misma contiene evidencia exculpatoria o beneficiosa al acusado-- es necesario que los tribunales exijan "alguna demostración afirmativa de la existencia de esa prueba", y no meras especulaciones que alimenten los argumentos de la defensa.[19] Ibid.

VI

Argumentan los peticionarios que constituye suficiente base, para activar la protección del debido proceso de ley, el mero hecho de que se trate de un testigo a quien el

_____

[19] A tono con lo anterior, hemos resuelto que "[n]o puede levantarse un castillo de precedentes en el aire, sin base racional en los autos, para imputar al Fiscal ocultación de prueba favorable al acusado." Pueblo v. Romero Rodríguez, ante, a la pág. 440. Asimismo hemos señalado que "el descubrimiento de prueba que rebasa el texto de la Regla 95 y busca apoyo en el debido proceso de ley no es recurso a invocarse livianamente." Pueblo v. Rodríguez Sánchez, ante, a la pág. 247; Pueblo v. Arocho Soto, ante, a las págs. 766-67. Ciertamente, este recurso "[e]stá muy lejos de ser patente de corso que en forma indiscriminada permita la intrusión en los archivos de fiscalía, ni que facilite al acusado cuanta evidencia pueda relacionarse con el caso criminal." Ibid. Así pues, claramente hemos establecido que esta protección constitucional sólo se activa ante circunstancias que impliquen "corrupción de la función depuradora de la verdad" la cual, según hemos dispuesto, "es la esencia procesal del juicio." Ibid.

ministerio fiscal le ha concedido inmunidad, viniendo obligado, a su juicio, el Estado a entregar la declaración jurada prestada por éste. No podemos avalar dicha posición.

Hay que recordar que el derecho a contrainterrogar efectivamente queda plenamente protegido al proveérsele al acusado la declaración jurada de los testigos de cargo, tan pronto como culmina el examen directo y antes de que comience el contrainterrogatorio. En cuanto al reclamo relativo a preparar adecuadamente la defensa del acusado, basta con reiterar la norma antes mencionada a los efectos de que no existe un derecho absoluto a descubrimiento de prueba a favor del acusado. Nuestras Reglas de Procedimiento Criminal disponen específicamente las circunstancias en las cuales un imputado puede obtener de manos del ministerio fiscal las declaraciones juradas de los testigos de cargo. La única excepción a esta norma, repetimos, surge ante un reclamo sustentado en el debido proceso de ley; sin embargo, ya hemos señalado que en estos casos lo que está en juego es la existencia de prueba favorable al acusado --específicamente en lo que respecta a su inocencia o castigo-- y no el impacto que la misma pueda tener en el proceso judicial a ser celebrado.[20]

---

[20] De este modo, se ha señalado que el estándar de "preparación adecuada" no puede ser utilizado a los efectos de determinar si cierta evidencia constituye lo que ha sido denominado como "Brady material". *Ibid*. A tales efectos, el Tribunal Supremo de los Estados Unidos ha señalado lo siguiente:

(Continúa...)

Reconocemos que el testimonio de un coautor puede ser impactante, y sumamente dañino, en un proceso criminal. Entendemos, sin embargo, que los derechos de un acusado quedan razonablemente protegidos con la entrega de la declaración jurada que el coautor haya prestado luego de que éste haya testificado y antes de que el representante legal del acusado lo contrainterrogue.

Esta es precisamente la conclusión a la que han llegado la mayoría de los tribunales de la jurisdicción norteamericana al interpretar la Regla 16 de las de Procedimiento Criminal federal,[21] específicamente se ha resuelto que la precitada Regla no provee para que un acusado pueda tener acceso a la declaración jurada de un testigo de cargo que no ha declarado en ninguna de las etapas del procedimiento penal por el simple hecho de que se trate de un testigo que es co-autor o co-conspirador de los

---

First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge. Véase: United States v. Agurs, ante, a la pág. 113 n.20.

[21] En su Inciso(E)(2), esta Regla prohíbe el descubrimiento de las declaraciones de los testigos de cargo, citándose como excepción a esta norma lo dispuesto en la Ley Jencks, 18 U.S.C. sec. 3500, a los efectos de que sólo podrán descubrirse las mismas luego de que el testigo haya testificado en examen directo.

delitos imputados.[22] Asimismo se ha resuelto que tales circunstancias, por sí solas, no activan el derecho a un debido proceso de ley a los efectos de obtener la declaración jurada de un testigo de cargo. United States v. Salerno, 796 F. Supp. 1099 (N.D.Ill. 1991).

Del mismo modo, se ha entendido que la doctrina establecida en Brady v. Maryland, ante, --y su progenie-- es suficiente para proteger el debido proceso de ley del acusado. United States v. Salerno, ante, a la pág. 1106. Así pues, para obtener la declaración jurada de este testigo, antes de lo dispuesto por ley, será necesario que el acusado demuestre que la misma "encompass exculpatory or impeaching material under Brady ...." United States v. Salerno, ante, a la pág. 1106.

La declaración jurada que solicitan los peticionarios fue prestada por un testigo que no ha testificado en ninguna de las etapas del procedimiento criminal y que tampoco ha sido renunciado por el ministerio fiscal. La única razón que

---

[22] United States v. Percevault, 490 F.2d 126 (2do Cir. 1974); United States v. Bentvena, 193 F. Supp. 485 (S.D.N.Y. 1960); United States v. Kearney, 436 F. Supp. 1108 (S.D.N.Y. 1977); United States v. Greater Syracuse Board of Realtors, Inc., 438 F. Supp. 376 (N.D.N.Y. 1977); United States v. Muñoz, 736 F. Supp. 502 (S.D.N.Y. 1990); United States v.. Canty, 971 F. Supp. 687 (N.D.N.Y. 1997); United States v. Guastella, 90 F. Supp. 2d 335 (S.D.N.Y. 2000); United States v. Roberts, 811 F.2d 257, (4to Cir. 1987); United States v. Thomas, 609 F. Supp. 1048 (E.D.N.C. 1985); United States v. Turner, 274 F. Supp. 412 (E.D.Tenn. 1967); United States v. Edelin, 128 F. Supp. 2d 23 (D.D.C. 2001). Véase, además: John F. Wagner Jr., *Statements of Persons Other Than Defendant as Subject to Discovery by Defendant Under Rule 16 Of Federal Rules Of Criminal Procedure*, 115 A.L.R. Fed. 573.

se aduce al solicitar la misma es que se trata de un co-autor al que el ministerio público le ha concedido inmunidad a cambio de su testimonio. <u>Es decir, los peticionarios no alegan que la declaración jurada contenga evidencia exculpatoria o que pueda ser relevante a la defensa del acusado</u>. <u>Tampoco reclaman la existencia de vicios de falsedad en la prueba del Estado</u>.

Lo único que sostienen es que, por tratarse de un co-autor, su testimonio debe ser examinado con "desconfianza y cautela" y que, por consiguiente, debe permitirse que la defensa examine su declaración para que pueda prepararse adecuadamente y efectuar un contrainterrogatorio efectivo. Además, alegan que si se les permite examinar la declaración jurada, dependiendo del contenido de la misma, podrían iniciar conversaciones para lograr una alegación preacordada. ¿Merecen tales circunstancias que obviemos los claros precedentes que existen, tanto en nuestra jurisdicción como en la jurisdicción norteamericana, en torno a este tema? <u>Contestamos en la negativa</u>. No hay fundamento jurídico válido alguno que sostenga una conclusión contraria.

En vista de lo anteriormente expresado, forzoso resulta concluir que los acusados, Víctor Arzuaga Rivera y Félix de Jesús Mendoza, tendrán que aguardar al momento en que el testigo William Figueroa Agosto se siente a declarar en el juicio ––o sea renunciado por el ministerio fiscal y puesto

a disposición de la defensa-- para obtener la declaración jurada que éste prestara ante el ministerio fiscal.

En mérito de lo antes expuesto, procede decretar la <u>confirmación</u> de la sentencia emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al foro de instancia para la continuación de procedimientos ulteriores compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Presidente Interino

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                    CC-2002-341       CERTIORARI

Víctor Arzuaga Rivera
Félix de Jesús Mendoza

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 4 de noviembre de 2003

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de presente, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Circuito de Apelaciones. En consecuencia, se devuelve el caso al foro de instancia para la continuación de procedimientos ulteriores compatibles con lo aquí resuelto.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo