This is an appeal from a conviction for manslaughter in the first degree arising out of an automobile accident in which a seventeen year old boy was killed. Punishment was fixed at ten years' imprisonment. At trial the appellant was represented by retained *Page 748 
counsel. On appeal he is represented by court appointed counsel and provided with a free transcript.
Two issues are presented on appeal: (1) Whether the trial judge erred in denying the appellant's challenge for cause of certain prospective jurors and (2) whether his motion for a new trial was due to be granted on the grounds of newly discovered evidence.
Alabama State Trooper Oscar D. Kyles investigated an automobile accident which occurred around 11:30 on the evening of February 19, 1977, on Alabama State Highway 163 near Dauphin Island Bridge in Mobile County, Alabama. The appellant's vehicle, a 1965 Ford pickup truck, had collided with the 1974 Ford Mustang driven by Charles Jackson Head, the deceased. Both vehicles were heavily damaged although the Mustang was demolished. There were fresh gouge marks near the center of the highway and debris from the wreck was scattered in an area of approximately ninety to one hundred feet. Skid marks belonging to the appellant's vehicle extended 138 feet south of the point of impact which Trooper Kyles determined to be in the middle of the deceased's lane.
When Trooper Kyles arrived Charles Head was already dead and his face was caved in completely. Carlton Wayne Tillman, a passenger in Head's Mustang, received only minor injuries. The appellant was taken to the emergency room at the University of South Alabama Hospital by ambulance. The two passengers who were with the appellant, Joseph Dale Gentry and Barry Faggard, received only minor injuries.
At the hospital Trooper Kyles attempted to interview the appellant who appeared "delirious" and smelled strongly of alcoholic beverages. The appellant was moaning and apparently could not understand the Trooper's questions.
Dr. Brian Keith Montgomery testified that he was a medical pathologist at the Mobile Infirmary. He stated that Charles Head died from "a massive crushing deformity of the face with massive injury to the brain".
Dr. Douglas H. Brown was an M.D. interning at the University of South Alabama Medical Center and treated the appellant following the accident. He testified that a blood alcohol test of a sample of the appellant's blood resulted in 315 milligrams percent alcohol. A level of 300 "usually implies that the patient is stuporous" and has a tendency to fall asleep or pass out. The appellant was "clinically" intoxicated. Dr. Brown also noticed the odor of alcohol on the appellant. Besides intoxication, the appellant was found to have suffered a cut of the bridge of the nose, several small lacerations and multiple bruises over his body and bruised ribs. Though the appellant made no complaint about his foot, when the appellant returned to the hospital the next day it was discovered he had a fractured bone in his foot. Dr. Brown testified that the blood alcohol test was done as a matter of routine in such cases where intoxication is suspected primarily to determine whether the patient's state is due to trauma from the accident or the alcohol and also to protect the hospital and doctors in a potential malpractice action for not discovering a fracture because the patient was intoxicated and did not complain about that specific injury.
Carlton Wayne Tillman was a passenger in the Mustang driven by the deceased. He was dozing when the deceased ran off the road. He raised up and thought he caught a glimpse of headlights but could not identify the driver of the other car. He stated that neither he nor the deceased had had anything to drink.
John Henry Ferrouillat had a fishing camp on Peavy Island and testified that the appellant came to help him with some mullet nets they had set out. The appellant arrived about four or five o'clock that afternoon and brought ten beers with him. The appellant did not appear intoxicated at any time and only consumed three beers before he left at 11:00 P.M. The appellant did not take any beer with him but left "at a high rate of speed". Mr. Ferrouillat stated that as the appellant was leaving someone asked *Page 749 
him why didn't he let one of the two boys drive. The appellant left the fishing camp on one side of Dauphin Island Bridge, drove across the bridge, and the accident happened when he came off the other side of the bridge.
Barry Lamont Faggard was a passenger in the vehicle driven by the appellant. He testified that the appellant did not have anything to drink on the way to the fish camp. However on the way home, as they were crossing the Dauphin Island Bridge, the appellant almost hit two cars on the bridge by swerving into their lane. The appellant was driving about ninety miles an hour Faggard thought, though he did not see the speedometer. When the appellant went around "that little curve" he was on the wrong side of the road and crashed into the Mustang driven by the deceased. Despite the fact that the appellant's truck was twelve years old, Faggard stated that he "had seen the speedometer of this truck at speeds over 100 miles an hour". He did not know whether his parents had made a claim for an insurance settlement on his behalf based on their uninsured motorist clause which would only allow recovery if the appellant was at fault.
The state rested its case and defense counsel's motion to exclude the evidence was denied.
The main thrust of the defense went to an attempted showing that the appellant was not intoxicated or driving in a reckless manner at the time of the collision.
Mrs. Pearl Ferrouillat testified that the appellant was not intoxicated when he arrived at or left their fishing camp, and that during the entire time he was there he only had three beers.
The appellant took the witness stand in his own behalf and testified that he did not drink any beer until he arrived at the fishing camp and only drank three beers during the six or seven hours he remained there. He stated that his truck was on its "last leg", would just barely pull itself, and certainly wouldn't go ninety miles per hour. The appellant testified that he was going thirty-five or forty miles per hour as he crossed the bridge and denied almost hitting two cars or swerving into the oncoming lane of traffic. He stated that he never saw the vehicle driven by the deceased and never saw any oncoming headlights. All he saw was a "flash" at the instant of the crash.
Cross examination of the appellant by the Assistant District Attorney revealed that the appellant did not have a driver's license, that it had been revoked for about fifteen years because of "minor tickets" including speeding, illegal mufflers, driving while intoxicated and reckless driving. The appellant admitted having three convictions for driving while intoxicated and one for reckless driving since 1974. In 1962 the appellant was convicted of second degree burglary. Because of these convictions, the appellant was not even eligible for a license when the crime occurred. The remainder of the testimony of the appellant was devoted to denying or attempting to explain away the wealth of incriminating evidence presented against him.
 I
We find no merit to the appellant's contention that the trial court erred in denying his challenges for cause of certain prospective jurors. Each juror challenged was individually examined by the trial judge and each testified in substance that he could render a fair and impartial verdict.
Where jurors testify that they have opinions but that they would try the case fairly and impartially according to the law and the evidence, and that their opinions would not influence their verdict, they are competent to serve and it is not error for a trial judge to deny a challenge for cause. Godau v.State, 179 Ala. 27, 60 So. 908 (1913); McCorvey v. State, Ala.Cr.App., 339 So.2d 1053, cert. denied, Ala., 339 So.2d 1058
(1976); 13 Alabama Digest, Criminal Law, 103 (2).
 II
The appellant contends that the motion for new trial was due to be granted because *Page 750 
of "newly discovered evidence". This evidence was the testimony of Joseph Dale Gentry, a passenger in the appellant's truck at the time of the collision. It is alleged that this witness moved to Mississippi shortly after the accident and could not be located at the time of trial.
In an affidavit attached to the motion for new trial, Gentry states that Barry Faggard was very drunk from having consumed one and one-half beers during the course of evening; that the appellant did not appear to be intoxicated; that the appellant might have driven as fast as seventy miles per hour in crossing the bridge but not faster; that on two occasions the appellant did cross the center line on the bridge but there was no traffic coming; that he (Gentry) did not see the other vehicle because it did not have any lights; and that at the time of the collision the appellant was in his own lane.
The record reveals that the trial judge continued the appellant's trial from June 20th til June 23rd because defense witnesses Mr. and Mrs. John Ferrouillat were not present. On the date of trial (June 23rd), the judge issued attachments to secure the presence of these witnesses and delayed the start of the trial until they arrived on defense counsel's representation that "the defense will not be ready for trial unless these witnesses are present" and that "the defense will be ready for trial if these witnesses are present". "These witnesses" referred to Mr. and Mrs. Ferrouillat. Witness Gentry was never mentioned or subpoenaed before trial. His presence was requested for the first time on the motion for new trial.
The issue in this regard was settled by the case of Vinet v.State, 38 Ala. App. 299, 301, 83 So.2d 357, cert. denied,263 Ala. 701, 83 So.2d 359 (1955), wherein the court held that the matter of a defendant's absent witness could not be raised for the first time by motion for new trial, where the defendant had rested his case without requesting any compulsory process for attendance of the witness, had not moved for any delay in the trial proceedings and had not requested that he be allowed showings on the testimony of the absent witness. To permit this matter to be raised for the first time by a motion for new trial where the existence of the witness was known before trial would be to allow the defendant to speculate on the verdict of the jury.
Here defense counsel announced ready for trial and the court's action in denying the motion for new trial was not error.
We have reviewed the record and found no error. This crime reveals an utter and total disregard for the laws of this State and the lives of others. The trial was fair and the punishment just. The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.