442 So.2d 155 (1983)
Mizell McMULLIN
v.
STATE.
6 Div. 883.
Court of Criminal Appeals of Alabama.
October 4, 1983.
Rehearing Denied November 1, 1983.
Certiorari Denied December 22, 1983.
*156 L. Dan Turberville, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Richard L. Owens, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 83-212.
BOWEN, Presiding Judge.
Mizell McMullin, the appellant, was arrested while fleeing the scene of a burning residence. He was indicted and convicted for arson in the first degree. Alabama Code Section 13A-7-41 (1975). Since *157 McMullin had two prior convictions for rape, he was sentenced as an habitual offender to life imprisonment. Four issues are raised on appeal.

I
McMullin alleged in his motion for new trial that the prosecutor knowingfully and willfully withheld the name of an eyewitness until after trial and thereby violated his right to due process under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
McMullin's pretrial motion to produce was granted. That motion contained a specific request for "(t)he names and addresses of all witnesses or prospective witnesses which the State of Alabama intends to call upon the trial of this case" and a general request for "(a)ll material or information which the State of Alabama has which tends to negate the guilt of the Defendant."
Sometime before trial, the prosecutor telephoned Mrs. Lilly Wills who lived next door to the burned residence. The prosecutor testified at the motion for new trial that he learned Mrs. Wills' name from a newspaper article which was stapled to the back of a report of the arresting officer which defense counsel "got to see." He stated that Mrs. Wills told him that she did not see anyone set the fire and that she indicated she "could not identify anybody." He also testified that he told defense counsel that there were "possibly witnesses next door, putting out the fire."
Defense counsel stated that the reason he did not discover the existence of this witness before trial was because he "relied on the prosecutor all the way up to the trial that there were no witnesses."
The trial judge held the hearing on the motion for new trial in abeyance for approximately three weeks so defense counsel could "produce something exculpatory that the State didn't give you." When the hearing reconvened, defense counsel testified that with some difficulty he had managed to contact Mrs. Wills. He stated that she told him that she saw two men in a car "casing the house" the night of the fire. She also saw someone "pouring some gas" then throwing something "which resembled a rolled up newspaper or something" onto the porch to start the fire. However, "she could not say absolutely that he (McMullin) was the same person that she saw near the porch" nor could she state that McMullin was one of the men she saw in the car. Mrs. Wills was not subpoenaed for the hearing.
"There is no general constitutional right to discovery in criminal cases, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). "A defendant has no constitutional or statutory right to compel the pretrial discovery of the State's witnesses." Peoples v. State, 418 So.2d 935, 937 (Ala.Cr.App.1982). "Prosecutors have no duty under Brady to disclose evidence that is inculpatory or available to the defense from another source ... or (to) produce duplicative information." 71 Georgetown L.J. 449, 511 Twelfth Annual Review of Criminal Procedure: United States Supreme Court And Courts of Appeal 1981-1982 (1982).
The moral culpability, or the willfulness, of the prosecutor is not a factor in deciding the constitutional issue involved here. "If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." United States v. Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). The suppression of evidence "material either to guilt or to punishment" violates due process "irrespective of the good faith of the prosecutor." Brady, 373 U.S. at 87, 83 S.Ct. at 1197.
Whether the withheld evidence is material is to be determined by applying the following standards: Where the accused has requested the specific information withheld or not produced, a new trial should be granted only if the nondisclosure "might have affected the outcome of the trial." Agurs, 427 U.S. at 104, 96 S.Ct. at *158 2398; Brady, supra. In cases where there has been merely a general request for exculpatory matter, and in cases where there has been no request at all, the conviction should be reversed only if the undiscovered evidence would create "a reasonable doubt that did not otherwise exist." Agurs, 427 U.S. at 109-12, 96 S.Ct. at 2400-02; United States v. Gaston, 608 F.2d 607, 612 (5th Cir.1979); Cannon v. Alabama, 558 F.2d 1211, 1215-16 (5th Cir.1977).
"(I)f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

Agurs, 427 U.S. at 112-13, 96 S.Ct. at 2402.
Project, 71 Geo.L.J. at 513, n. 1174 and 1175.
Here, the motion to produce specifically sought the names of those witnesses or prospective witnesses which the State "intends to call upon the trial of this case." The prosecutor's testimony at the hearing on the motion for new trial makes it clear that the State never intended to call Mrs. Wills as a trial witness. Consequently, we find, as did the trial judge employing this same reasoning, that the prosecutor did not violate the judge's order granting the motion to produce. Compare this request to the request in Wright v. State, 424 So.2d 684 (Ala.Cr.App.1982), for "(a) list of all witnesses interviewed by the State in connection with this prosecution and their residence and/or business addresses."
It is also clear from the prosecutor's testimony that his conversation with Mrs. Wills was a product of his own initiative and investigation. Defense counsel was given access to the police report containing the newspaper article that led the prosecutor to telephone Mrs. Wills and was also told that the people next door put out the fire. "Truth, justice, and the American way do not ... require the (State) to discover and develop the defendant's entire defense." United States v. Brown, 628 F.2d 471, 473 (5th Cir.1980).
"The purpose of the Brady rule is not to provide a defendant with a complete disclosure of all evidence in the (State's) file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him."

United States v. Ruggiero, 472 F.2d 599, 604 (2nd Cir.1973).
The information given to the prosecutor by Mrs. Wills is in no way exculpatory or favorable to the defendant. See Reed v. State, 407 So.2d 153 (Ala.Cr.App.1980), reversed on other grounds, 407 So.2d 162 (Ala.1981). At best, her testimony could be characterized as neutral, for she could neither identify the defendant as the person who started the fire, nor state that he was not the person who started the fire. Hughes v. Hopper, 629 F.2d 1036 (5th Cir. 1980); United States v. Rhodes, 569 F.2d 384 (5th Cir.), cert. denied, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978). Cf. United States v. DePalma, 461 F.2d 240, 241 (9th Cir.1972) (where the testimony of an eyewitness who observed a man dressed in clothing similar to that worn by the robber but could not identify the appellant as the man she saw was characterized as being of "such vague and uncertain quality that it cannot be said to fall within the suppression rule.") See Annot. 34 A.L.R.3d 16, Section 26(a) (1970). This nondisclosed information would not even have been useful for impeachment purposes. United States v. Mesa, 660 F.2d 1070, 1076 (5th Cir.1981). On the contrary, it tends to corroborate the testimony of the State's main witness.[1] *159 See Greenwood v. Massey, 469 F.Supp. 935 (S.D.Fla.1979).
Mrs. Wills' testimony does not meet either of the materiality standards outlined above. Evaluated in the context of the entire record, the information she could have imparted at trial would certainly not create a "reasonable doubt that did not otherwise exist." Agurs, 427 U.S. at 112, 96 S.Ct. at 2402.
Even if we consider McMullin's request to be a specific request for the names of eyewitnesses, his conviction is due to be reversed only if the nondisclosure "might have affected the outcome of the trial." Agurs, 427 U.S. at 104, 96 S.Ct. at 2398; Project: Criminal Procedure, 71 Geo.L.J. at 513, no. 1174. Because Mrs. Wills' testimony was totally neutral as to the identity of the perpetrator of this offense and tended to substantiate the testimony of the State's main witness, we are confident in concluding that nothing in that testimony would have affected the jury's verdict and that the nondisclosure of her identity did not affect McMullin's right to a fair trial.

II
McMullin argues that the trial judge improperly and prematurely excused a venireman "without sufficient voir dire to test the nature of the relationship and the ability of the prospective juror to be guided by the Court as to the consideration of evidence and the determination of guilt or innocence."
In response to voir dire examination by the prosecutor, venireman McGill stated that he knew McMullin, that he went to school with him, that it would make him feel "somewhat uneasy" to sit on the jury, and that he felt he "might" be biased one way or the other because of his knowledge of McMullin in the past. When McGill stated that he would like to be excused from the jury, the trial judge excused him. To his excusal, defense counsel responded, "Note our exception."
Later, after the jury had been selected and instructed by the trial judge, defense counsel stated his objection:
"I just wanted to preserve the record. I already moved and you noted an exception when the man McGill was excused. I would just like to state my grounds. I don't believe that the proper predicate to excuse that juror was met. He did not say he would be unable to render a fair and impartial verdict based solely on the evidence."
By failing to make a timely and proper objection the defendant cannot avail himself of any alleged error and has preserved nothing for review. Tate v. State, 417 So.2d 608 (Ala.Cr.App.1982). An "exception" is not equivalent to an "objection". Garrett v. State, 33 Ala.App. 168, 31 So.2d 151 (1947); Horn v. State, 23 Ala.App. 273, 124 So. 125 (1929). Exceptions, like objections, must be specific. Whittle v. State, 205 Ala. 639, 89 So. 43 (1921); Graham v. State, 46 Ala.App. 608, 246 So.2d 675 (1971).
Here, we find no abuse in the judge's discretion in excusing the prospective juror even though McGill's answers indicated "reluctance and hesitation rather than definite inability to decide the case on the evidence alone." Carter v. State, 420 So.2d 292, 295 (Ala.Cr.App.1982). Probable prejudice for any reason disqualifies a prospective juror. Alabama Power Co. v. Henderson, 342 So.2d 323 (Ala.1976). A juror should be impartial between the parties. Wilson v. State, 243 Ala. 1, 8 So.2d 422 (1942).

III
McMullin objected to the following comments of the prosecutor in closing argument:

*160 "MR. CAHILL: Don't you think the Nord's are wondering what his motives are. Don't you think in the same breath that they're saying, the guy put a match to our house. Something should be done.
"MR. JAFFE (Defense Counsel): We object to that. They didn't say that, Judge.
"THE COURT: Overruled.
. . . .
"MR. CAHILL: Let there be no doubt in your mind where the District Attorney's office stands, where the State of Alabama stands, where those people out there stand as far as this case is concerned.
"MR. JAFFE: We object to that statement, Judge."
The argument that the defendant put a match to the house was a reasonable inference from the evidence. More than that, it was the basis of the State's entire case and certainly a proper subject for comment in closing argument. Moreover, the prosecutor did not state that the victim actually made the statement. He was speculating: "Don't you think that the Nord's are wondering?" Since no motive for the arson was shown, we view this comment as coming within the considerable latitude allowed counsel in drawing deductions from the evidence. Espey v. State, 270 Ala. 669, 120 So.2d 904 (1960). Here, the prosecutor did not use any unfair tactic to create prejudice in the minds of the jurors. Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958); Granberry v. State, 182 Ala. 4, 62 So. 52 (1913). We also view the prosecutor's comments as a legitimate appeal for law enforcement. Cook v. State, 369 So.2d 1251 (Ala.1978); Richardson v. State, 354 So.2d 1193 (Ala.Cr.App.1978).

IV
McMullin alleged in his motion for new trial that the prosecutor "coached" two witnesses into "lying" and changing their testimony in order to strengthen the State's case. At the hearing on this motion, defense counsel subpoenaed the arresting officer and the fire inspector who had testified as State's witnesses at McMullin's trial. He asserted that the day before trial the fire inspector and the arresting officer told him that no matches were found at the scene and that they were not even sure how the fire started. At trial, both witnesses testified that matches were found at the scene of the crime and near McMullin. A photograph of one match found on the porch of the residence was admitted into evidence at trial.
The trial judge refused to permit defense counsel to examine the subpoenaed witness, ruling that counsel had the opportunity to cross examine the witnesses at trial and that he would not allow counsel to "recross" the witnesses at the hearing on the motion for new trial: "I'm not going to use this Court on a motion for a new trial to recross a witness that you had on the stand and you could have cross examined him to your heart's content."
The record reflects that during the State's direct examination of the arresting officer co-counsel for the defense requested the trial judge to allow defense counsel to exit the courtroom: "He (defense counsel) has just become a witness in this case based on what we would contend is a prior statement made to him from Mr. Mardis." Yet, defense counsel never testified.
On cross examination of the arresting officer, defense counsel went into the facts that the officer's personal arrest report made no mention of matches. The officer denied telling defense counsel that no matches were found at the scene. Counsel also cross examined the fire inspector about the matches found at the scene.
The contradictory statements of the fire inspector and the arresting officer do not constitute newly discovered evidence since defense counsel knew of their existence at the time of the trial. Although counsel argues that he wanted to prove prosecutorial misconduct by showing the testimony of these two witnesses before the grand jury, the witnesses could have been impeached and discredited at trial by showing contradictory testimony before the grand jury. Bryson v. State, 38 Ala.App. *161 517, 520, 84 So.2d 782 (1955), affirmed, 264 Ala. 111, 84 So.2d 785 (1956). Defense counsel could also have testified that the witnesses made contradictory statements. Yet, at trial, neither method of impeaching either witness was attempted. Whether the issue is framed in terms of misconduct of the prosecutor, the use of perjured testimony, or impeachment, the result is the same. Counsel could and should have taken advantage of his knowledge and information at trial.
We recognize that misconduct by the prosecuting attorney in procuring evidence against the accused by means of deception and fraud constitutes a proper ground for a motion for new trial. 24 C.J.S. Criminal Law Section 1442(b), n. 12 (1961). However, because defense counsel had the same information, knowledge, and witnesses available at trial as he did on the motion for new trial, we find that the trial judge properly denied the motion for new trial. The general rule is found in 24 C.J.S. Criminal Law Section 1428 (1961).
"Although courts have sometimes departed from this rule, generally, in analogy to the rule limiting the scope of review on appeal to questions raised below, a new trial will not be granted for matters pertaining to rulings, evidence, or occurrences at a trial, including erroneous conduct on the part of the court, counsel, or jury, unless timely and sufficient objections, requests, motions, or exceptions have been made and taken. Any grounds which might have been afforded by such matters are presumed to have been waived, except where such matters were unknown to applicant until after verdict and could not have been discovered by the exercise of reasonable diligence, and except in instances of fundamental errors which of themselves invalidate the trial."
See also Jarrell v. State, 355 So.2d 747 (Ala.Cr.App.1978). "(T)he failure of the defendants to develop all the material evidence within the knowledge of the witness during his examination, though it be material, cannot be made the basis of a new trial." Rains v. Ethridge-Atkins Motor Co., 221 Ala. 160, 162, 127 So. 905 (1930).
Because of the seriousness of this issue, this Court has carefully examined the grand jury notes of Fire Inspector R.M. Young, the arresting officer Patrick Mardis, and Craig Nord, the resident of the burned premises. These grand jury notes were reviewed by the trial judge, sealed, and sent to this Court. The testimony of those witnesses is very brief. Obviously, there was no attempt made by the assistant district attorney to present the entire State's case to the grand jury. The grand jury testimony does not contradict the trial testimony. The testimony contains no reference to matches but both the fire inspector and the arresting officer indicate that they knew how the fire started. There is nothing in the grand jury notes to indicate that any witness changed his testimony. There is nothing in the record to indicate that the prosecutor is guilty of any misconduct.
The judgment of the circuit court is affirmed.
AFFIRMED.
TYSON and HARRIS, JJ., concur.
HUBERT TAYLOR, J., dissents with opinion.
SAM W. TAYLOR, J., joins in dissent.
HUBERT TAYLOR, Judge (dissenting).
I respectfully dissent. While pretrial discovery in a criminal proceeding is not yet a recognized right of an accused, a court order requiring the State to give certain information should be obeyed in letter and spirit. Three elements of this case are clear: (1) the State was required to release any information which would tend "to negate the guilt of the defendant;" (2) the State was aware of the existence of an eyewitness to the crime; and (3) the State did not disclose that information.
I am aware of the long line of cases which hold that withheld information must be exculpatory or favorable to the accused. This particular eyewitness would have testified *162 that she was not certain if the appellant was one of the men she observed burning the building. This information in the hands of the defense could have changed the entire climate of the trial. The defense could have called this witness and then made a forcible argument to the jury on the element of reasonable doubt. The strategy of the trial could have changed, especially if the defense was successful in planting seeds of doubt in the minds of jurors as to why the State had not called an eyewitness to the crime.
I believe this to be a proper setting for this court to erase all doubt with regard to the duty of the State to obey a pretrial discovery order in a criminal proceeding. The good or bad faith of the prosecutor should not be considered; those elements of the human mind are not easily discerned. What is clear is that the rights of an accused where personal liberty is at issue should embrace the right to know if an eyewitness to the crime could or could not identify him. On that knowledge may depend not only the strategy of the trial but the result.
NOTES
[1] The State's main witness, Patrick Mardis, an off-duty UAB security guard, testified that he was driving down the street on which the victim lived when he observed two black males standing near a parked car. When Mardis turned around in a driveway and retraced his route, the two men jumped in the car and drove off. Mardis then saw another man standing in front of the victim's house. This man made a tossing motion with his hands and immediately thereafter the victim's front porch burst into flames. A black male ran across the street and Mardis gave chase. He apprehended the defendant, McMullin, a short distance away.