ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>JUAN MALDONADO DE JESÚS<br>AARON VICK<br><br>Recurridos | KLCE202401019 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br>K VP2021-2767<br>y otros<br>K VP2022-1281<br>y otros<br><br>Sobre:<br>Tent. Art. 202 CP, Art. 211 CP, Art. 217 CP, Art. 254 CP y Art. 212 CP |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Adames Soto y la Juez Lotti Rodríguez[1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2025.

I.

Tras desestimar los cargos presentados por la Oficina del Panel Sobre el Fiscal Especial Independiente (OPFEI), contra los señores Aaron W. Vick y Juan Maldonado De Jesús por violación a los artículos 202, 211, 212, 217 y 254 del Código Penal de Puerto Rico de 2012,[2] el 6 de septiembre de 2022, el Tribunal de Primera Instancia declaró académica una *Orden* emitida el 29 de agosto de 2022 para que el FEI entregara a la Defensa un *Informe de Investigación Preliminar*, (*Informe*) rendido por el Departamento de Justicia (DJ). Consecuentemente, no atendió la reconsideración que oportunamente presentó el FEI sobre la misma.

---

[1] Conforme a la OATA-2025-069 del 7 de mayo de 2025, la Hon. Glorianne M. Lotti Rodríguez sustituyó al Hon. Abelardo Bermúdez Torres.
[2] 33 LPRA Sec. 5272; *Id.* Secs. 5281-5282; *Id.* Sec. 5287; *Id.* Sec. 5345.

Número Identificador

SEN2025_____

Una vez revocado el dictamen desestimatorio por el Tribunal Supremo de Puerto Rico el 22 de septiembre de 2022 y reinstalados todos los cargos, el 15 de febrero de 2024, la OPFEI acudió ante este foro intermedio para que revocáramos el dictamen que le ordenaba entregar el mencionado *Informe*. Mediante *Sentencia* dictada el 28 de junio de 2024, devolvimos el caso al Foro de origen con la instrucción de que se identificaran aquellas partes del *Informe* que, según el buen juicio y sana discreción del Tribunal de Primera Instancia, constituyeran prueba exculpatoria.

Así las cosas, el 11 de septiembre de 2024, el Tribunal de Primera Instancia ordenó al FEI entregar a la Defensa determinadas partes del *Informe* por considerar que constituían evidencia exculpatoria. En desacuerdo, el 13 de septiembre de 2024, el FEI solicitó *Reconsideración*. El 18 de septiembre de 2024, notificada el 13, el Tribunal de Primera Instancia se negó a reconsiderar. Aun inconforme, el 20 de septiembre de 2024, el FEI acudió ante nos mediante *Certiorari*.[3] Plantea:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA DE SAN JUAN AL DETERMINAR QUE LOS MENSAJES DE TEXTO ENTRE LOS IMPUTADOS SON PRUEBA EXCULPATORIA Y LOS AN[Á]LISIS DE DERECHO DEL FISCAL INVESTIGADOR QUE SURGEN DEL INFORME DEL DJPR SON PRUEBA EXCULPATORIA.**

El 28 de octubre de 2024, Aaron Vick presentó su Alegato. Ese mismo día, hizo lo propio Maldonado De Jesús mediante *Memorando en Oposición a Expedición de Auto de Certiorari*. Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia aplicables, resolvemos.

II.
A.

La Constitución Federal,[4] así como la Constitución de Puerto Rico, establece que, "en todos los procesos criminales, el acusado disfrutará del

---

[3] Acompañó al recurso de *Certiorari* con *Moción Urgente en Auxilio de Jurisdicción*. El 20 de septiembre de 2024, emitimos Resolución donde ordenamos la paralización de los procedimientos ante el Tribunal de Primera Instancia, Sala de San Juan, hasta tanto este foro emita su dictamen. Otorgamos a la parte recurrida un término de 20 días para expresarse sobre los méritos del recurso. El 9 de octubre de 2024, concedimos la prórroga solicitada por la parte recurrida, el señor Vick. El 10 de octubre de 2024, concedimos la prórroga requerida por la parte recurrida, el señor Maldonado De Jesús.

[4] La llamada Cláusula de Confrontación o "Confrontation Clause", dispone en su parte pertinente: "In all criminal prosecutions, the accused shall enjoy the right. . .to be confronted with witnesses against him. . . .". U.S. CONST. Amend. VI.

derecho a. . .carearse con los testigos de cargo. . .".[5]    Esta cláusula de confrontación adquiere concreción y sentido, si a la luz del debido proceso de ley se ponen al alcance del acusado los medios de prueba para impugnar la credibilidad de los testigos y todo recurso análogo encaminado a erradicar la falsedad del juicio y evitar el desvío de la justicia. Un careo sin estos instrumentos frustra el propósito del precepto constitucional.[6]

Corolario de lo anterior, la Sección 11 del Art. II de nuestra Constitución, garantiza a todo acusado el derecho a preparar una defensa adecuada y obtener prueba a su favor.[7] De manera que, todo imputado de delito tiene derecho a informarse debidamente en la preparación para su defensa, así como a obtener, mediante el descubrimiento de prueba, evidencia que pueda favorecerle.[8] No obstante, el derecho del imputado a descubrir prueba no es absoluto. La Regla 95 de Procedimiento Criminal,[9] constituye una "barrera estatutaria contra las llamadas 'expediciones de pesca' en los archivos de fiscalía".[10] El Tribunal Supremo ha señalado que el descubrimiento de prueba que rebasa el texto de la citada Regla y busca apoyo en el debido proceso de ley no es recurso a invocarse livianamente.[11] Ello así, ya que la Constitución no tuvo la intención de conceder a los acusados el derecho ilimitado de exigir la entrega de todo material meramente porque está o pueda estar relacionado con el caso penal entablado en su contra.[12]

La determinación inicial acerca de la procedencia de una petición de descubrimiento de prueba, y por ende de su relevancia para la adecuada defensa del acusado, descansa en la sana discreción del Tribunal de Primera Instancia. Ciertamente, siempre debe gravitar en todo este proceso judicial, que el objetivo "es la búsqueda de la verdad", pues únicamente "se hace

---

[5] Art. II, Sec. 11, Const. PR, LPRA, Tomo 1.

[6] *Pueblo v. Guerrido López*, 179 DPR 950, 958 (2010); *Pueblo v. Rodríguez Sánchez*, 109 DPR 243 (1979); Art. II, Sec. 11, *supra*.

[7] *Pueblo v. Arocho Soto*, 137 DPR 762 (1994).

[8] Véase *Pueblo v. Arzuaga*, 160 DPR 520 (2003); *Pueblo v. Arocho Soto, supra*; *Pueblo v. Rodríguez Sánchez, supra*; *Hoyos Gómez v. Tribunal Superior*, 90 DPR 201 (1964).

[9] 34 LPRA Ap. II., R. 95.

[10] *Pueblo v. Arzuaga, supra.*

[11] *Id.; Pueblo v. Rodríguez Sánchez, supra.*

[12] *Pueblo v. Olmedo Zayas,* 176 DPR 7 (2009); *Pueblo v. Rodríguez Sánchez, supra.*

justicia cuando se conoce toda la verdad".[13] Sin embargo, en ocasiones es inevitable la colisión entre los intereses del Estado y los del acusado.

En *Pueblo v. Tribunal Superior,* 102 DPR 470 (1974), el más Alto Foro judicial local estableció que los tribunales deberán llegar a un justo balance entre los intereses del acusado al descubrimiento de prueba y los del Estado, luego de ponderar meticulosamente: (a) si los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación y son pertinentes para su defensa; (b) su importancia para la seguridad del Estado o la confidencialidad de la labor investigativa, y (c) la razonabilidad de la petición, tomando en cuenta sus propósitos, de manera que no haya innecesarias dilaciones en los procedimientos ni hostigamiento o molestias indebidas a los funcionarios del Estado.[14] Este delicado balance tiene que realizarse tomando en consideración los hechos del caso y la totalidad de las circunstancias que rodean la acción. De esta manera, el tribunal podrá determinar hasta qué punto la prueba solicitada por la defensa de un imputado de delito abona o ayuda a establecer que no es responsable de los hechos por los que se le acusa.[15]

Ese balance de intereses es precisamente la medula de la controversia que hoy atendemos. Por un lado, la Defensa sostiene que el *Informe* rendido por el DJ en la investigación preliminar, contiene prueba exculpatoria que el Estado está obligado a descubrir. Por su parte, el Estado alega que la prueba que el Tribunal *a quo* ordenó descubrir es parte de su *work product* o sumario fiscal confidencial protegido por la doctrina. Veamos.

A tenor con la Regla 95 de Procedimiento Criminal,[16] rectora del descubrimiento de prueba en el ámbito penal, el Estado acusador tiene la

---

[13] *Pueblo v. Velázquez Colón,* 174 DPR 304 (2008) (citando a *Pueblo v. Ribas,* 83 DPR 386, 389 (1961).
[14] *Id.*
[15] *Pueblo v. Custodio Colon,* 192 DPR 567 (2015).
[16] Dispone:
 (a) El acusado presentará moción al amparo de esta Regla dentro en un término de cumplimiento estricto de veinte (20) días contados a partir de: i) la celebración del acto de lectura de acusación en los casos que se impute la comisión de un delito grave; o ii) la primera comparecencia del acusado al proceso asistido por el abogado que habrá de representarlo en el juicio, en los casos en que se impute la comisión de un delito menos grave. En el caso que la persona acusada manifieste que se

obligación de poner a disposición de la defensa la prueba documental y demostrativa si está presente cualquiera de las siguientes condiciones: (1) **la prueba es pertinente para preparar la defensa del acusado;** (2) **el fiscal se propone utilizar la prueba en el juicio; o** (3) **la prueba fue obtenida del acusado o le pertenece**.[17] En lo aquí pertinente, el inciso (a) (4) de la Regla 95, incluye, entre la evidencia descubrible por el Estado al acusado, **"[c]ualquier libro, papel, documento, fotografía,** objeto tangible, estructura

---

representará por derecho propio, el Tribunal deberá advertirle desde cuándo comienza a discurrir el término establecido en esta Regla, así como las consecuencias de su incumplimiento. **Sometida la moción de la defensa conforme a lo dispuesto en esta Regla, el Tribunal ordenará al Ministerio Fiscal o a cualquier agencia o instrumentalidad pública que permita al acusado inspeccionar, copiar o fotocopiar el siguiente material o información que está en posesión, custodia o control del Ministerio Fiscal o a cualquier agencia o instrumentalidad pública:**

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.
(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.
(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.
(4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.
(5) El récord de convicciones criminales previas del acusado.
(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado. El descubrimiento de esta prueba estará sujeto a las siguientes condiciones:

(A) Que los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación;
(B) que no afecte la seguridad del Estado ni las labores investigativas de sus agentes policíacos, y
(C) que la correspondiente moción del acusado sea presentada con suficiente antelación a la fecha señalada para la celebración del juicio, de manera que no haya innecesarias dilaciones en los procedimientos ni se produzcan molestias indebidas a los funcionarios del Estado.

(b) **El Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder.**
(c) La defensa deberá incluir, junto con la solicitud de descubrimiento de prueba, las órdenes necesarias para solicitar el material o la información que prevé que el Ministerio Público no tendrá bajo su custodia, dirigidas a las personas o entidades que la poseen, custodian o controlan. El Ministerio Público deberá entregar la información y/o material solicitado que tenga bajo su custodia o control e informar al tribunal si existe algún material o información que le fue solicitada, pero que no se encuentra bajo su posesión, custodia o control, en cuyo caso el tribunal ordenará a la persona o entidad que la posea, custodie o controle, que la ponga a la disposición del acusado.
(d) **No estarán sujetos a descubrimiento o inspección de la defensa los escritos de investigación legal, <u>informes</u>, memorandos, correspondencia u otros documentos internos <u>que contengan opiniones, teorías o conclusiones del Ministerio Fiscal.</u>**
(e) Toda información y/o material que se pretenda solicitar y no esté enumerado en esta regla, deberá venir acompañado de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado. Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95 (énfasis nuestro).

[17] *Pueblo v. Santa-Cruz Bacardí,* 149 DPR 223 (1999) (citando a ERNESTO L. CHIESA APONTE, DERECHO PROCESAL PENAL DE PUERTO RICO 334 (1era ed. 1993) (énfasis nuestro).

o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio **o que fue obtenido del acusado o perteneciera al acusado**".[18] De igual forma, el inciso (b) de la Regla 95 obliga el Estado a revelar toda aquella **evidencia exculpatoria del acusado** que tenga en su poder.[19]

En tal sentido, por exigencia del debido proceso de Ley, "el Ministerio Fiscal tiene el deber de revelar cualquier evidencia exculpatoria, testimonio perjuro o indicios de falsedad en la prueba que tenga en su poder".[20] Es responsabilidad del Estado, en su obligación de proveer un juicio justo bajo la cláusula de debido proceso de Ley, y aun sin mediar solicitud de la defensa, revelar cualquier evidencia que exonere en su poder o vicios de falsedad en su prueba que "de permanecer ocultos e ignorados sofocarían la verdad en la sala de justicia".[21] No obstante, "[l]a jurisprudencia en torno a este tema es clara: no existe un derecho constitucional a descubrir prueba antes del juicio".[22] De manera que, la única excepción a la precitada norma surge en virtud de evidencia exculpatoria.[23] Por ello, cuando en la vista preliminar "un imputado reclame un testigo consignado al dorso de la denuncia como testigo de cargo, **deberá hacer una demostración *prima facie*** de que ese testigo puede aportar prueba exculpatoria que razonablemente y con toda probabilidad, derrotaría la estimación de causa probable para acusar".[24]

Así pues, evidencia exculpatoria es toda aquella que resulta favorable al acusado y **que posee relevancia en cuanto a los aspectos de culpabilidad y castigo,** y cuya supresión tiene severas consecuencias contra el Estado, independientemente de la buena o mala fe exhibida por el

---

[18] 34 LPRA Ap. II, R. 95.
[19] *Id.*
[20] *Pueblo v. Arzuaga*, 160 DPR 520 (2003); *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299 (1991) (citas omitidas);
[21] *Pueblo v. Arzuaga*, supra.
[22] *Id.* (citando a *Weatherford v. Bursey*, 429 U.S. 545 (1977); Véanse además: *McDole v. State*, 339 Ark. 391 (1999); *City of New York v. Gentile*, 669 N.Y.S.2d 854 (1998); *Williams v. Commonwealth*, 434 S.E.2d 343 (1993); *McMullin v. State*, 442 So. 2d 155 (1983); 4 *LaFave and Israel, Criminal Procedure 2d* Sec. 20.3, pág. 883 (1999); 3 *Wright, Federal Practice and Procedure: Criminal 3d* pág. 71 (2000)).
[23] *Id.*
[24] *Pueblo v. Rodríguez Aponte*, 116 DPR 653 (1985) (énfasis nuestro).

Ministerio Fiscal en ocultarla.[25] **No se trata de cualquier evidencia sino de aquella que "con una razonable probabilidad, habría alterado -ya sea el veredicto o el castigo impuesto-, de haber sido presentada al juzgador de los hechos"**.[26]

B.

Es norma reiterada que el Sumario Fiscal es privado y secreto.[27] El Fiscal no tiene "el deber constitucional de rutinariamente entregar su expediente completo al abogado de la defensa".[28] Por ello, la persona investigada tampoco tiene derecho a "obtener el expediente investigativo que el Panel tenga ante sí al momento de nombrar un F.E.I.".[29] En ese sentido, el Tribunal Supremo de Puerto Rico ha mantenido de forma inequívoca lo siguiente:

> En ausencia de una expresión legislativa al respecto, *los funcionarios públicos investigados bajo la Ley del F.E.I. no pueden tener más derechos de acceso al expediente investigativo que los derechos que tiene un ciudadano común que sea objeto de una investigación criminal.* Sabido es que *antes* de mediar una acusación criminal, el sumario fiscal, esto es, **el expediente del Ministerio Público que contiene las declaraciones juradas y la prueba del Fiscal es privado y secreto**.[30]

Ahora bien, incluso tras haberse formulado una acusación criminal, el descubrimiento de prueba a favor del acusado:

---

[25] *Pueblo v. Velázquez Colón*, 174 DPR 304 (2008); Pueblo v. *Arzuaga, supra*; *Pueblo v. Echevarría Rodríguez I*; *Pueblo v. Vélez Bonilla*, 189 DPR 705 (2013). Véase además *Youngblood v. West Virginia*, 547 US 867 (2006); *United States v. Salerno*, 796 F.Supp. 1099 (1991); *Giglio v. United States*, 405 US 150 (1972); *Moore v. Illinois*, 408 US 786 (1972); *Brady v. Maryland*, 373 US 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.") (énfasis nuestro).

[26] *Pueblo v. Echevarría Rodríguez I, supra*; y *Pueblo v. Velázquez Colón* (énfasis nuestro); *Pueblo v. Vélez Bonilla,* 189 DPR 705 (2013).

[27] *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363, 424 esc. 4 (1999) (citando a *Santiago v. Bobb y El Mundo Inc.*, 117 DPR 153, 163 (1986); *Silva Iglesia v. F.E.I.*, 137 DPR 821 (1995).

[28] *United States v. Agurs*, 427 U.S. 97 (1976); "On the other hand, since **we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel,** we cannot consistently treat every nondisclosure as though it were error. It necessarily follows that the judge should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless-error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his 'conviction is sure that the error did not influence the jury or had but very slight effect.' *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant." United States v. *Agurs, supra*.

[29] *Silva Iglesia v. F.E.I.*, 137 DPR 821(1995) (citando a *Santiago v. Bobb y El Mundo, Inc.*, 117 DPR 153, 163 (1986)) (énfasis en el original).

[30] *Id.* (citando a E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, V. III, Sec. 28.2, pág. 337) (énfasis en el original).

**[N]o incluye el material acumulado en el sumario o expediente fiscal que constituye producto del trabajo del Ministerio Público, en el sentido de interpretación de la evidencia recopilada.** Por otra parte, hay mucho del sumario fiscal que de ser revelado implicaría dejar 'al descubierto los objetivos, métodos o técnicas investigativas especiales'.[31]

Considerado lo anterior, en *Hickman v. Taylor*, 329 U.S. 495, (1947) se pautó la norma sobre la doctrina del producto del trabajo del abogado(a) que posteriormente fue incorporada en las Reglas Federales de Procedimiento Civil.[32] En el precitado caso, el Tribunal Supremo federal explicó que, de cara a nuestro sistema legal adversarial es esencial que un abogado o abogada trabaje con cierto grado de privacidad, libre de intrusiones innecesarias por la parte contraria y sus abogados.[33] El Máximo Foro judicial intimó que:

La preparación adecuada del caso de un cliente exige que éste recopile información, separe lo que considera relevante de los hechos irrelevantes, prepare sus teorías jurídicas y planifique su estrategia sin interferencias indebidas e innecesarias. Esa es la manera histórica y necesaria en que los abogados actúan en el marco de nuestro sistema de jurisprudencia para promover la justicia y proteger los intereses de sus clientes. Este trabajo se refleja, por supuesto, en entrevistas, declaraciones, memorandos, correspondencia, resúmenes, impresiones mentales, creencias personales y otras innumerables formas tangibles e intangibles. . .como el 'producto del trabajo del abogado'.[34]

Según el Tribunal, como regla general, los materiales preparados por un abogado o abogada en anticipación de un litigio no deberán ser divulgados.[35] Sin embargo, a modo de excepción, deberán revelarse cuando el peticionario demuestre la necesidad de "producir cualquiera de estos

---

[31] *Id.* (énfasis suplido)

[32] Fed. R. Civ. P. 26(b)(3) dispone:
(b) Discovery and Limits
(3) *Trial Preparation: Materials.*
(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
    (i) they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

[33] *Hickman v. Taylor*, 329 U.S. 495 (1947); "Ni siquiera la más liberal de las teorías del descubrimiento puede justificar investigaciones injustificadas sobre los expedientes y las impresiones mentales de un abogado". *Id.* (traducción suplida)

[34] *Id.* (traducción suplida).

[35] *Id.*

materiales o que la denegación de producción perjudicaría indebidamente la preparación del caso del peticionario o le causaría cualquier dificultad o injusticia".[36]

En *Saunders v. United States,* 316 F.2d 346 (1963), el Tribunal de Apelaciones del Distrito de Columbia afirmó que, si un abogado(a) ha plasmado sus pensamientos en las notas de su entrevista, las mismas están protegidas bajo la inmunidad de *work product*.[37] No obstante, si el contenido de las notas son un registro sustancialmente *verbatim* de la entrevista, estas no incluyen ningún material protegido que surja de los procesos mentales del abogado(a).[38] En *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981), el Tribunal Supremo de Estados Unidos concluyó que las notas y memorandos que el Gobierno solicitó son *work product* no sujeto a descubrimiento ya que, contenían las impresiones mentales del abogado(a) sobre las declaraciones orales de los empleados de la compañía.[39]

En *Ades v. Zalman,* 115 DPR 514 (1984), nuestro Tribunal Supremo precisó que el producto de la labor del abogado "consiste de esa información que él ha reunido y las impresiones mentales, teorías legales y estrategias que él persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorándum, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles o intangibles".[40] En *Santiago v. Bobb y El Mundo Inc.*, 117 DPR 153 (1986), se expresó en favor de la visión judicial de que la confidencialidad de la información se determina

---

[36] *Id.*

[37] *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (1977) (donde el tribunal sostiene que es necesario evaluar si el documento en controversia ha sido obtenido o preparado en anticipación de un litigio. "Test to be applied to determine application of work product doctrine is whether, in light of nature of documents and actual situation in particular case, document can fairly be said to have been prepared or obtained because of prospect of litigation.")

[38] *Id.* (citando a *United States v. Aviles*, 200 F.Supp. 711 (1961); *United States v. Crosby*, 294 F.2d 928, 951 (1961); *Mittleman v. U.S.*, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962)).
   "If notes taken by a government attorney while interviewing a witness contain both verbatim remarks of the witness and personal observations of the attorney and production of the notes is sought, the district judge must inspect the statement and excise the protected material if possible, and if it is not clear from reading the notes whether or not they contain substantially a verbatim description of the witness' remarks, a hearing should be conducted to resolve the matter. 18 U.S.C.A. § 3500(e)." *Id.* (citando a *Palermo v. United States*, 360 U.S. at 355, 79 S.Ct. at 1226; *United States v. McKeever*, 271 F.2d 669, 673-675 (C.A. 2, 1959)).

[39] *Upjohn Co. v. U.S.*, 449 U.S. 383, 401 (1981).

[40] Citando a *State ex rel. Dudek v. Circuit Court for Milwaukee County,* 150 N.W.2d 387 (1967) (énfasis nuestro).

mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza.[41] "En esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición previa al reconocimiento del privilegio".[42] Añade que, como regla general, la evidencia acumulada en el sumario fiscal debe mantenerse confidencial.[43]

En *S.L.G. v. Mini-Warehouse*, 179 DPR 322 (2010), nuestro más alto foro expresó que, en el caso de los peritos consultores, "los consejos que hayan ofrecido fundamentados en información revelada durante las comunicaciones privadas entre éste y un cliente o su abogado pueden ser consideradas" como opiniones protegidas bajo la doctrina de *work product*.[44] En esta misma línea, en *McNeil Healthcare, LLC v. Municipio de Las Piedras,* 206 DPR 659 (2021), el Tribunal Supremo de Puerto Rico determinó que, para utilizar los mecanismos de descubrimiento de prueba contra un perito consultor, se requiere que se demuestren circunstancias excepcionales. No obstante, lo anterior se diferencia del descubrimiento amplio y liberal que se permite respecto a los peritos testigos, "quienes, además de tener que proveer los resúmenes, opiniones y teorías de lo que declararán, el tribunal podrá ordenarles que descubran prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables".[45]

Específicamente en el ámbito penal, en *Pueblo v. Tribunal Superior*, 102 DPR 470 (1974), tocó a nuestro Tribunal Supremo resolver si los informes de los policías rebasan el alcance de la Regla 95 de Procedimiento Criminal.

---

[41] *Santiago v. Bobb y El Mundo Inc.*, 117 DPR 153 (1986) (citando a *Peña Clos v. Cartagena Ortiz,* 114 DPR 576 (1983); *Soto v. Srio. de Justicia,* 112 DPR 477 (1982)).

[42] *Id.*

[43] "No hay duda de que, revelar la información que contienen ciertos expedientes, inclusive la confirmación de su existencia podría acarrear serias y graves consecuencias. Se pueden 'sustraer del escrutinio público determinados documentos e informes que estén ligados a la fase investigativa o preventiva del crimen y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso, la vida de informantes, confidentes y testigos, así como la de los propios empleados y funcionarios del Estado, o que de cualquier otro modo afecten verdaderamente la seguridad pública'. *Soto* v. *Srio. de Justicia*, supra, pág. 495. También podrían quedar al descubierto los objetivos, métodos o técnicas investigativas especiales. Esto alertaría a los violadores de ley. Ellos, conociendo anticipadamente la naturaleza de la causa proyectada en su contra, prepararían mejor sus defensas o provocarían la destrucción de evidencia, o abandonarían la jurisdicción". *Id.* en la pág. 164.

[44] *S.L.G. v. Mini-Warehouse*, 179 DPR 322 (2010) (citando a *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 665 (3er Cir. 2003)).

[45] *Id.*

Determinó que, ello dependerá de las circunstancias de cada caso y que la expedición de una orden para revelar los informes antes del juicio es una función que descansa en la discreción del juzgador.[46] Destacó que, el procedimiento de la Regla 95 no confiere un derecho absoluto a descubrir todos los documentos y objetos a que la Regla se refiere.[47] El Tribunal deberá establecer un justo balance entre los derechos del acusado y los intereses del Estado.[48] En esa tarea, deberá tomar en consideración:

> [S]i los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación y son pertinentes para su defensa; su importancia para la seguridad del Estado o la confidencialidad de la labor investigativa; y la razonabilidad de la petición tomando en cuenta sus propósitos, de manera que no haya innecesarias dilaciones en los procedimientos ni hostigación o molestias indebidas a los funcionarios del Estado.[49]

De manera similar, en *Pueblo v. López*, KLCE202300413, este foro intermedio concluyó que no procedía la divulgación a la defensa del Informe de Investigación Preliminar del Departamento de Justicia, ya que, el Informe en su totalidad constituía "un resumen y análisis de los abogados que lo prepararon en torno a los resultados de su investigación".[50] Sin embargo, en cuanto a las notas de entrevistas a testigos, tomadas por agentes investigadores y fiscales, concluyó que procedía su descubrimiento por no contener *work product* privilegiado.[51] Según dicho caso, las notas de entrevistas a los testigos:

> [N]o contienen 'opiniones, teorías o conclusiones', Regla 95(d), *supra*, 'ni interpretación de la evidencia', 'ni impresiones mentales, teorías legales [o] estrategias', *Ades*, supra; *Santiago v. Bobb*, 117 DPR 153, 164 (1986). Tampoco contienen apuntes con información cuya divulgación pudiese poner en riesgo 'los resultados de una investigación en curso' o de algún otro modo afectar 'la seguridad pública'. *Santiago*, supra, 117 DPR a la pág. 164.
> En vez, las notas en controversia únicamente consisten de una transcripción informal de las preguntas formuladas por el investigador (agente o fiscal) y las respuestas provistas por la persona entrevistada. Al no haber privilegio aplicable, y al

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Piñeiro Colón v. Emanuelli Hernández*, KLAN202200841 (10 de febrero de 2023); *Pueblo v. Monserrate Pérez*, KLCE200801555 (31 de octubre de 2008); *Pueblo v. Rosario*, KLCE200600178 (29 de marzo de 2006).
[51] *Id.*

tratarse de información pertinente para la defensa, procedía ordenar su descubrimiento.[52]

### III.

En la *Resolución* recurrida, el Tribunal de Primera Instancia ordenó al FEI descubrir a la Defensa desde la página 50 hasta la página 53, específicamente la Sección L del *Informe,* donde se discute lo relacionado con el Sr. Aaron Wayne Vick. También, la Sección 3, *La ilegalidad del trámite administrativo de la compra de APEX, la invalidez científica de las pruebas rápidas y la falta de capacidad corporativa de APEX como fundamento para sustentar la comisión de delitos,* contenido en la página 99 hasta la página 103 del *Informe.* De la Sección 4 (Código Penal de Puerto Rico), ordenó descubrir los acápites: (a) Artículo 202, páginas 104-110; (d) Artículo 211, páginas 114-116; (e) Artículo 212, páginas 116-119; (g) Artículo 254, páginas 121-123; y la Sección VI, la Conclusión consignada desde la página 152 hasta la página 154 del *Informe.*

En consecuencia, procede evaluar las secciones del *Informe* previamente mencionadas, para determinar si contienen prueba exculpatoria o si, por el contrario, constituyen *work product* y no corresponde su divulgación.

En primer lugar, las páginas 50-53 y 105 del *Informe,* más allá del registro sustancialmente *ad verbatim* de los textos intercambiados entre Maldonado De Jesús y Vick, contienen análisis e impresiones mentales de los investigadores del DJ sobre dichos mensajes de texto. En la susodicha Sección el investigador formula una interpretación de la evidencia y emite opiniones, lo cual es considerado *work product.* A su vez, la transcripción de los mensajes de textos íntegramente no son prueba exculpatoria. Sin embargo, conforme a la Regla 95 de Procedimiento Criminal, los acusados tienen derecho a solicitar los mensajes de textos **en la etapa del juicio**, por tratarse de prueba obtenida de él o de su propiedad, mas no en la etapa de Vista Preliminar.

---

[52] *Id.*

En lo atinente al "Análisis Jurídico conforme al Estado de Derecho Aplicable y la Prueba Recopilada", específicamente en la Sección 3: "*La ilegalidad del trámite administrativo de la compra a APEX, La invalidez científica de las pruebas rápidas y La falta de capacidad corporativa de APEX*" contenido en las páginas 99-103 del *Informe*, consiste precisamente, en información que el DJ reunió atado a las impresiones mentales, opiniones, conclusiones y teorías legales que adoptó, derivadas de investigaciones de derecho. De manera que, las páginas 99-103 tampoco son descubribles por ser *work product*.

Respecto a la Sección 4 del "Análisis Jurídico conforme al Estado de Derecho Aplicable y la Prueba Recopilada" consignados en las páginas 104-110, 114-116, 116-119 y 121-123 del *Informe*, resulta forzoso concluir que también contienen *work product* y no son descubribles. Allí obran opiniones, impresiones mentales, interpretación de la evidencia y análisis de derecho realizado por los investigadores del DJ, evidentemente, parte de su *work product*. Por último, en lo que respecta al sexto acápite sobre la Conclusión del *Informe* en las páginas 152-154, es indiscutible que consiste en opiniones y conclusiones del DJ en virtud del análisis de derecho, teorías legales e interpretación de la evidencia.

Finalmente, la Defensa se equivoca al intimar que la conclusión del *Informe* exonerando a los imputados de la comisión de delitos, constituye prueba exculpatoria y por tanto tiene que descubrirse. Argumentan que, en virtud de la conclusión del DJ, es razonable pensar que el *Informe* le es favorable lo cual constituye prueba exculpatoria y descubrible en esta etapa de los procedimientos.[53] Como relacionamos anteriormente, el descubrimiento de prueba a favor del acusado "[n]o incluye el material

---

[53] *Memorando en Oposición a Expedición de Auto de Certiorari*, en la pág. 17 ("¿Cómo un Informe donde se concluye que el Sr. Maldonado de Jesús no cometió delito alguna [sic] no constituye prueba exculpatoria?") *Alegato del señor Aaron Vick*, en la pág. 9 ("Aunque el señor Aaron Vick no ha tenido acceso al Informe emitido por el Departamento de Justicia, es un hecho que, luego de recopilar y evaluar toda la evidencia sobre la compra fallida de las pruebas de Covid-19, el Departamento de Justicia concluyó que el imputado no debería ser acusado con la comisión de delito alguno. Por lo tanto, es más que razonable pensar que el Informe en su totalidad o, cuando menos, porciones del mismo, le es favorable y, por definición, constituye prueba exculpatoria a la que tiene derecho en esta etapa de los procedimientos".)

acumulado en el sumario o expediente fiscal que constituye producto del trabajo [*work product*] del Ministerio Público, en el sentido de interpretación de la evidencia recopilada". Reiteramos que no existe un derecho constitucional a descubrir prueba antes del juicio, salvo en lo pertinente a prueba exculpatoria, la cual el acusado puede solicitar, por excepción, antes de iniciarse dicha etapa del procedimiento criminal.[54] En ausencia de prueba exculpatoria, la normativa de carácter excepcional no resulta aplicable al presente caso.

IV.

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revoca el dictamen recurrido. Se ordena la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[54] *Pueblo v. Arzuaga, supra.*