ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>APELADO<br><br>V.<br><br>FRANCHESKA LÓPEZ QUIÑONES<br><br>APELANTE | KLAN202400463 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Criminal Núm. KBD2023G0009 al 15<br><br>Sobre:<br>Art. 202 B C.P.<br>Art. 182 C.P. |

Panel integrado por su presidenta, la jueza Ortiz Flores, el juez Rivera Torres y el juez Campos Pérez[1]

**Ortiz Flores, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Comparece ante este tribunal revisor la señora Francheska López Quiñones (Sra. López Quiñones; apelante) y nos solicita que revoquemos el fallo condenatorio adjudicado mediante la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 9 de febrero de 2024 y notificada al día siguiente 10 de febrero de 2024.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la sentencia apelada.

**I**

Por hechos acontecidos durante los años de 2017 al 2018, el Ministerio Público presentó acusaciones contra la Sra. López Quiñones por infracciones al Artículo 182 (apropiación ilegal agravada) y una violación al Artículo 202 (b) (fraude) del Código Penal de 2012. Las acusaciones expresan lo siguiente:

**K BD20230009:**

Francheska López Quiñones, allá en o para el periodo del 15 de agosto de 2017 al 18 de enero de 2018, en San Juan, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de San Juan, de forma ilegal, voluntaria, intencional, criminalmente, realizó actos fraudulentos que afectaron los intereses y bienes

[1] Mediante Orden Administrativa OATA-2025-013, se modifica la integración del Panel como sigue: la Hon. Camille Rivera Pérez dejó de ejercer funciones como Jueza del Tribunal de Apelaciones desde el 6 de febrero de 2025.

patrimoniales de la corporación JL Marketing Firm representada por su presidente Javier A. López Matos. Estos actos fraudulentos consistieron en que la imputada realizó 6 transferencias electrónicas de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a la corporación JL Marketing Firm, a la cuenta número 027122271 perteneciente a José Carlos Santiago Vázquez y a la cuenta 362-240861 perteneciente a Francheska López Quiñones. Lo anterior sin estar autorizada por funcionario alguno de la corporación. Transferencias que totalizaron $7,263.65. Hecho contrario a la Ley.

### K BD20230010:

[E]l 4 de diciembre de 2017 […] a propósito, de forma ilegal, voluntaria, intencional, criminalmente, y mediante engaño se apropió ilegalmente sin violencia ni intimidación de bienes muebles pertenecientes a JL Marketing Firm, representada por su presidente Javier A. López Matos, consistente en que mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 362-240861 del Banco Popular de Puerto Rico perteneciente a Francheska López Quiñones la cantidad de $600.00. Hecho contrario a la Ley.

### K BD20230011:

Francheska López Quiñones, allá en o para el día 18 de diciembre de 2017 […] mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 362-240861 del Banco Popular de Puerto Rico perteneciente a Francheska López Quiñones la cantidad de $650.00. Hecho contrario a la Ley.

### K BD20230012:

Francheska López Quiñones, allá en o para el 16 de agosto de 2017 […] mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 027122271 perteneciente a José Carlos Santiago Vázquez la cantidad de $1,250.00. Hecho contrario a la Ley.

### K BD20230013:

Francheska López Quiñones, allá en o para el día 30 de octubre de 2017 […] mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 362-240861 del Banco Popular de Puerto Rico perteneciente a Francheska López Quiñones la cantidad de $1,573.65. Hecho contrario a la Ley.

### K BD20230014:

Francheska López Quiñones, allá en o para el día 2 de enero de 2018 […] mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 362-240861 del Banco Popular de Puerto Rico

perteneciente a Francheska López Quiñones la cantidad de $2,000.00. Hecho contrario a la Ley.

**K BD20230015:**

Francheska López Quiñones, allá en o para el día 18 de enero de 2018 […] mediante transferencia electrónica (ACH) de la cuenta número 030-858984 del Banco Popular de Puerto Rico perteneciente a JL Marketing Firm, transfirió a la cuenta número 362-240861 del Banco Popular de Puerto Rico perteneciente a Francheska López Quiñones la cantidad de $1,200.00. Hecho contrario a la Ley.

El juicio se celebró por tribunal de derecho, los días 2 de junio, 15 y 29 de septiembre, 23 de octubre, 18 de diciembre de 2023, 29 de enero, 5 de febrero y 9 de abril de 2024. Los testigos del Ministerio Público lo fueron el señor Rey David Arnaldo García Martínez quien es empleado del Banco Popular, el señor Joaquín López Cámara quien es padre del perjudicado, el señor Javier Antonio López Matos (Sr. López Matos) quien es el perjudicado y antiguo presidente y dueño de la compañía JL Marketing, el señor Ricardo Reyes del Valle quien es el sargento que realizó la investigación del caso y la señora María Luisa García Ibáñez quien es la Contadora Pública Autorizada. Por su parte, la defensa presentó los testimonios del señor Jorge Aquino Barreto quien es Contable Público Autorizado y la apelante la Sra. López Quiñones.

Luego de escuchados todos los testimonios y evaluada la prueba presentada, el tribunal emitió su fallo condenatorio y halló a la Sra. López Quiñones culpable de los seis cargos de apropiación ilegal agravada y de fraude. Por tal motivo sentenció a la apelante a cumplir ocho (8) años por el cargo K BD2023G0009 y tres (3) años por cada uno de los demás cargos. Dicha sentencia debe ser cumplida bajo el régimen de sentencia suspendida. Además, se le impuso un pago de $7,263.65 por concepto de restitución y $300 de pena especial en cada cargo.

Inconforme con lo anterior, la apelante acude ante nosotros mediante el recurso de epígrafe y expone los siguientes señalamientos de error:

A. Erró el Honorable Tribunal de Primera Instancia al denegar la solicitud de descubrimiento de prueba de la defensa en torno a las planillas de contribución sobre

ingresos de la corporación JL Marketing Firm, supuesta perjudicada de los delitos imputados, por entender equivocadamente que no eran pertinentes a los hechos alegados en las acusaciones presentadas en contra de la Apelante.

B. Erró el Honorable Tribunal de Primera Instancia al condenar a la Apelante por los delitos imputados a pesar de que la prueba no estableció todos los elementos constitutivos requeridos.

C. Erró el Honorable Tribunal de Primera Instancia al condenar a la Apelante a pesar de que la prueba presentada no estableció la comisión de los delitos imputados más allá de duda razonable.

## II

### A.

La Constitución del Estado Libre Asociado de Puerto Rico garantiza el derecho de todo acusado en procesos criminales a gozar de la presunción de inocencia. Art. II, Sec. 11, Const. EEUU, Art. II, Sec. 11, Const. ELA, LPRA, Tomo I. Para poder rebatir esa presunción, se exige que el Estado presente prueba, más allá de duda razonable, sobre: (1) todos los elementos del delito, y (2) su conexión con el acusado. *Pueblo v. García Colón,* 182 DPR 129, 174 (2011); *Pueblo v. Santiago et al.,* 176 DPR 133, 142 (2009); *Pueblo v. Irizarry,* 156 DPR 780, 786 (2002); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000). Por su parte, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, viabiliza este imperativo constitucional, disponiendo en parte como sigue:

En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá [ ...].

Para cumplir con ese rigor probatorio, nuestro ordenamiento jurídico exige que la prueba que presente el Ministerio Público sea suficiente en Derecho, lo que significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Rosario Reyes,* 138 DPR 591, 598 (1995); *Pueblo v. Cabán Torres,* 117 DPR 645, 652 (1986); *Pueblo v. Carrasquillo Carrasquillo,* 102 DPR 545, 552 (1974). Dicho de otro modo, la duda razonable "se concretiza en nuestra mente cuando, llegado el día

de decidir la culpabilidad del acusado, nos encontramos vacilantes, indecisos, ambivalentes o insatisfechos en torno a la determinación final". *Pueblo v. Soto González,* 149 DPR 30, 43 (1999).

**B.**

Los foros apelativos no debemos intervenir con las determinaciones de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. Véase, *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Por tanto, la discreción judicial no se da en un vacío ni en ausencia de otros parámetros, sino que como tribunal revisor debemos ceñirnos a los criterios transcritos. Cónsono con lo anterior, es norma reiterada en nuestro ordenamiento jurídico que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba que tienen ante sí y que la apreciación que de ella realizan merece de nuestra parte, como tribunal revisor, gran respeto y deferencia. *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984). Por ello, la norma es que, ante la ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con las conclusiones de hechos o con la apreciación de la prueba que haya realizado el foro primario. *Id.*

En *Pueblo v. Toro Martínez*, 200 DPR 834 (2018), se afirmó lo siguiente:

> El juez sentenciador es ante quien deponen los testigos. Este es quien tiene la oportunidad de verlos y observar su manera de declarar. Así pues, como regla general, un tribunal revisor está vedado de intervenir con la adjudicación de credibilidad de los testigos, ni puede sustituir las determinaciones de hechos que a su amparo haya efectuado el foro primario basado en sus propias apreciaciones.

Por lo que, "al revisar una determinación atinente a una condena criminal, hay que tener presente que la apreciación de la prueba corresponde al tribunal sentenciador, salvo que se deba revocar porque surgió de una valoración apasionada, prejuiciada o parcializada, o porque

su dictamen sea claramente erróneo". *Pueblo v. Toro Martínez, supra,* en la pág. 837. Asimismo, los tribunales apelativos debemos brindarle gran deferencia al juzgador de los hechos, pues es este quien se encuentra en mejor posición para evaluar la credibilidad de un testigo. Debido a que los foros apelativos contamos con récords mudos e inexpresivos, debemos respetar la adjudicación de credibilidad realizada por el juzgador primario de los hechos. *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

No obstante, aun cuando la norma es de deferencia, podemos intervenir con estas conclusiones cuando la apreciación de la prueba que realizó el tribunal de instancias no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba. *Ortiz v. Cruz Pabón*, 103 DPR 939, 946 (1975). La intervención del Tribunal de Apelaciones con la evaluación de la prueba testifical que haya realizado el Tribunal de Primera Instancia procede en aquellos casos en que un análisis integral de dicha prueba ocasione, en el ánimo del foro apelativo, una insatisfacción o intranquilidad de conciencia tal que hiera el sentido básico de justicia.

Así pues, la parte que cuestione una determinación de hechos realizada por el Tribunal de Instancia debe señalar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009). Además, los señalamientos ante los tribunales apelativos tienen que estar sustentados con la prueba adecuada, debido a que meras alegaciones no son suficientes para mover nuestra facultad modificadora. *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987).

### C.

En los procedimientos criminales, una vez se ha sometido el pliego acusatorio, las normas que rigen el descubrimiento de prueba del Ministerio Público a favor del acusado están comprendidas en la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95. Nuestro ordenamiento jurídico garantiza el derecho del acusado al descubrimiento de prueba, con el fin de que éste pueda prepararse adecuadamente para su defensa.

Igualmente, el imputado de delito tiene derecho a obtener aquella evidencia que pueda favorecerle. *Soc. Asist. Legal v. Ciencias Forenses*, 179 DPR 849, 857 (2010); *Pueblo v. Guzmán*, 161 DPR 137 (2004). La prueba favorable puede consistir tanto en la exculpatoria como de impugnación. *Pueblo v. Torres Feliciano,* 201 DPR 63, 73 (2018). El mecanismo que sirve para la consecución de dichos derechos es el procedimiento de descubrimiento de prueba contemplado en la norma antes citada. *Pueblo v. Arzuaga,* 160 DPR 520, 530 (2003).

La Regla 95 de Procedimiento Criminal, *supra*, dispone, en lo pertinente, lo siguiente:

> (a) […] Sometida la moción de la defensa conforme a lo dispuesto en esta Regla, el Tribunal ordenará al Ministerio Fiscal o a cualquier agencia o instrumentalidad pública que permita al acusado inspeccionar, copiar o fotocopiar el siguiente material o información que está en posesión, custodia o control del Ministerio Fiscal o a cualquier agencia o instrumentalidad pública:
> (1) […]
> (2) […]
> (3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.
> (4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.
> (5) […]
> (6) […]
>
> (b) El Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder.
>
> (c) La defensa deberá incluir, junto con la solicitud de descubrimiento de prueba, las órdenes necesarias para solicitar el material o la información que prevee [*sic*] que el Ministerio Público no tendrá bajo su custodia, dirigidas a las personas o entidades que la poseen, custodian o controlan. El Ministerio Público deberá entregar la información y/o material solicitado que tenga bajo su custodia o control e informar al tribunal si existe algún material o información que le fue solicitada, pero que no se encuentra bajo su posesión, custodia o control, en cuyo caso el tribunal ordenará a la persona o entidad que la posea, custodie o controle, que la ponga a la disposición del acusado.
>
> (d) […]
>
> (e) Toda información y/o material que se pretenda solicitar y no esté enumerado en esta regla, deberá venir acompañado

de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado.

De conformidad con la jurisprudencia aplicable, el Ministerio Público viola el debido proceso de ley del acusado, cobijado en la Decimocuarta Enmienda de la Constitución de Estados Unidos, cuando suprime prueba favorable para el acusado y material para la culpabilidad o el castigo del imputado. *Brady v. Maryland*, 373 US 83, 87 (1963).[2] La evidencia es material si la misma implica una razonable posibilidad de variar el resultado. U*S v. Bagley*, 473 US 667, 674 (1985).[3] Así pues, "[p]or imperativo del debido proceso de ley, el Ministerio Fiscal tiene el deber de revelar cualquier evidencia exculpatoria, testimonio perjuro o indicios de falsedad en la prueba que tenga en su poder". *Pueblo v. Romero Rodríguez*, 112 DPR 437, 440 (1982), citado en *Pueblo v. Arzuaga, supra,* pág. 537; véase, además, la Regla 95 (b) de Procedimiento Criminal, *supra*.

Ahora bien, este derecho no es absoluto ni equivale a una "expedición de pesca" en los archivos del Ministerio Público. *Soc. Asist. Legal v. Ciencias Forenses, supra*. Esto es, la solicitud de evidencia no es una carta blanca para facilitar el acceso a toda la prueba relacionada con el caso criminal, sino que dicha evidencia deberá ser material y relevante por su sustancia. *Pueblo v. Rodríguez Sánchez*, 109 DPR 243, 246-247 (1979). Es decir, el acusado que solicite el descubrimiento de prueba "debe hacer alguna demostración *prima facie* convincente de la materialidad de esa evidencia y de la legitimidad de su petición que la excluyen de la calificación de alegación simplemente dilatoria, onerosa y hostigante". *Pueblo v. Rodríguez Sánchez*, *supra*, en la pág. 249. A tales efectos, es

---

[2] El Tribunal Supremo de Estados Unidos expuso lo siguiente: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". *Brady v. Maryland*, 373 US 83, 87 (1963).
[3] En el caso citado, el Tribunal Supremo federal se expresó como sigue:
The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and "material either to guilt or to punishment". "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."
[…]
Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial […]. *US v. Bagley*, 473 US 667, 674-675 (1985).

necesario que el peticionario ponga al tribunal en posición de poder concluir que la prueba en cuestión le sería favorable y que la misma sería constitucionalmente material para su defensa. *Pueblo v. Torres Feliciano, supra*, en la pág. 74, que cita a *Pueblo v. Arzuaga, supra,* en la pág. 539. Descansará en la sana discreción del tribunal la concesión o denegación de la producción de la evidencia solicitada, a base de criterios de razonabilidad. *Pueblo v. Vélez Bonilla,* 189 DPR 705, 724 (2013).

**D.**

El Código Penal de Puerto Rico de 2012 tipifica como delito el apropiarse ilegalmente, sin haber mediado violencia o intimidación, de bienes muebles que pertenecen a otra persona. Se trata de apropiación ilegal, el cual tiene una modalidad grave codificada en el Artículo 182. Este lee como sigue:

**Artículo 182. — Apropiación ilegal agravada**

Toda persona que cometa el delito de apropiación ilegal descrito en el Artículo 181, y se apropie de propiedad o fondos públicos, será sancionada con pena de reclusión por un término fijo de quince (15) años. Toda persona que se apropie de bienes cuyo valor sea de diez mil dólares ($10,000) o más será sancionada con pena de reclusión por un término fijo de ocho (8) años. Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta treinta mil dólares ($30,000).

Si el valor del bien apropiado ilegalmente es menor de diez mil (10,000) dólares, pero mayor de quinientos (500) dólares, será sancionada con pena de reclusión por un término fijo de tres (3) años. Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta diez mil dólares ($10,000).

Constituirá una circunstancia agravante a la pena a imponer por este delito y por el delito tipificado en el Artículo 181 cuando el bien ilegalmente apropiado sea ganado vacuno, caballos, porcinos, cunicular y ovino, incluyendo las crías de cada uno de estos, de frutos o cosechas, aves, peces, mariscos, abejas, animales domésticos o exóticos, y maquinarias e implementos agrícolas que se encuentren en una finca agrícola o establecimiento para su producción o crianza, así como cualquier otra maquinaria o implementos agrícolas que se encuentren en una finca privada, empresas o establecimiento agrícola o cualquier artículo, instrumentos o piezas de maquinaria que a esos fines se utilicen.

El tribunal también podrá imponer la pena de restitución. Cuando la apropiación ilegal incluya propiedad o fondos públicos el tribunal impondrá la pena de restitución. 33 LPRA sec. 5252.

Por otro lado, en la Sección Séptima, que versa acerca de las defraudaciones, en el Código Penal se tipifica como delito lo siguiente:

**Artículo 202. — Fraude**

Será sancionada con pena de reclusión por un término fijo de ocho (8) años, toda persona que fraudulentamente con el propósito de defraudar:

(a) Induzca a otra a realizar actos u omisiones que afecten derechos o intereses patrimoniales sobre bienes inmuebles o bienes muebles de esa persona, del Estado o de un tercero, en perjuicio de éstos; o

**(b) Realice actos u omisiones que priven a otra persona o afecten los derechos o intereses patrimoniales sobre bienes inmuebles o bienes muebles para perjuicio de ésta, del Estado o de un tercero.**

Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta treinta mil dólares ($30,000).

El tribunal también podrá imponer la pena de restitución. (Énfasis nuestro.) 33 LPRA sec. 5272.

**III**

En su primer señalamiento de error, la apelante plantea que el TPI erró a no permitirle realizar el descubrimiento de prueba en cuanto a las planillas de ingreso de la corporación JL Marketing por este entender que no eran pertinentes a la controversia. Para atender dicho error rescatamos lo previamente esbozado acerca del proceso de descubrimiento de prueba en procesos penales. Dicho proceso es uno amplio, no obstante, ello no es sinónimo de ilimitado y los jueces de instancia tienen discreción para limitarlo en aras de pertinencia. Dicha denegatoria del foro primario se basó en que las planillas de JL Marketing no son pertinentes al caso y coincidimos con tal decisión. Por otro lado, la apelante no logró demostrar de manera convincente la materialidad de la prueba que no se permitió descubrir y de la legitimidad de su petición que la excluyese de la calificación de alegación simplemente dilatoria, onerosa y hostigante.

Ahora bien, el segundo y tercer error son en torno a la apreciación de la prueba por lo que los discutiremos en conjunto. De entrada, debemos

subrayar que como tribunal revisor contamos con récords mudos e inexpresivos por lo que debemos gran respeto y deferencias a la adjudicación de credibilidad que haya realizado el tribunal de instancia. Es este quien tuvo ante sí la prueba y quien evaluó el *demeanor* de los testigos. A estos efectos, son pertinentes las siguientes palabras de nuestro Tribunal Supremo:

> [N]uestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical que se presenta ante ellos**. Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir las determinaciones del foro primario por sus propias apreciaciones**. *Pueblo v. García Colón*, [182 DPR 129 (2011).]. Este Tribunal ha reafirmado que las determinaciones de hechos del Tribunal de Primera Instancia que estén sustentadas en prueba oral, merecen gran deferencia por los tribunales apelativos. (Énfasis nuestro) *Pueblo v. De Jesús Mercado*, 188 DPR 467, 477-478 (2013).

En el caso ante nuestra consideración, el Sr. López Matos testificó y declaró que conocía a la Sra. López Quiñones desde que ambos eran muy jóvenes pues habían estudiado juntos desde la escuela hasta la universidad. Como La apelante había estudiado contabilidad, el Sr. López Matos la contrató para su compañía JL Marketing. A preguntas de la Fiscal Maricarmen Rodríguez Barea, el Sr. López Matos declaró lo siguiente:

> P: Entonces, ¿para qué fecha, entonces, usted la recluta a ella oficialmente?
>
> R: En marzo… si mal no recuerdo, en marzo de 2014.
>
> P: "Marzo 2014". ¿Qué funciones usted le designó? ¿Cuál era su posición en JL Marketing?
>
> R: Presidente y dueño.
>
> P: "Presidente y dueño". ¿Y qué funciones usted le delegó a Francheska Quiñones en esa corporación?
>
> R: *Comptroller*. Básicamente, encargada de todo el manejo de las finanzas de la agencia. Los cobros de dinero, pagos, empleados, entrar todo, las transacciones en los libros de la contabilidad. […]
>
> […]
>
> P: Okey. Durante marzo de 2014 a octubre de 2017, ¿quién tenía el control de las finanzas de JL Marketing?

[…]

Honorable Juez: ¿Quién tenía, si alguien?

[…]

R: Sí. Francheska, que era la persona que tenía el control total de las finanzas. No solamente las de JL Marketing, pero de las mías personales, también.

P: Cuando usted recluta a Francheska López, ¿cuál fue la remuneración, si alguna, acordada?

R: Tengo entend… si mal no recuerdo, eran alrededor de $2,000.00 mensuales.

P: ¿Y hasta cuándo ella estuvo recibiendo esa remuneración?

[…]

R: Hasta, más o menos, a principios de octubre, octubre 2, cuando yo logro salir de Isabela y pude reunirme con ella, y dejé saber que no… teníamos que parar las operaciones porque no teníamos ningún ingreso.

[…]

P: Okey. Y después de eso, ¿qué acuerdo, si alguno, usted llegó a cabo con ella?

R: Yo no llegué a ningún acuerdo con ella. Yo me mantuve en comunicación con ella porque era muy amiga mía y yo estaba en un estado muy mal, y yo terminé yéndome de Puerto Rico y mantenerme en comunicación. Estaba tratando de ver cómo podíamos echar otra vez la compañía a andar. Pero ya estábamos bastante mal.[4]

Al tratarse de una apropiación ilegal de dinero realizada a través de transferencias electrónicas desde la cuenta de una corporación, en el caso se discute acerca de los informes de transacciones de la compañía. Según surge del expediente las finanzas de JL Marketing eran manejadas por la apelante y esta utilizaba un programa para llevar a cabo sus funciones llamado *Quickbooks* que le permitía generar un *General Ledger* el cual es un informe de transacciones, dicho documento es manipulable por quienes tengan acceso a este mediante el uso de un *token* que consta de un usuario y contraseña. Por otro lado, el banco —en este caso el Banco Popular— emite un informe llamado Web Cash Management el cual registra todas las

---

[4] Transcripción de Prueba Oral (TPO), pestaña 3, págs. 62-65.

transacciones realizadas de la cuenta de la corporación en orden cronológico. Dicho informe no es manipulable y en este constan las transacciones que originaron las acusaciones y registra que fueron transferidas a cuentas pertenecientes a la apelante y su cónyuge. Al percatarse de las transacciones en cuestión, el Sr. López Matos relató en juicio lo citado a continuación:

> P: Una vez, cuando usted adviene en conocimiento de esas transacciones que usted había mencionado, que no eran autorizadas, ¿qué hace usted con relación a ese asunto? Si algo.
>
> R: Me comuniqué con Francheska y le pregunté sobre las mismas, el cual, pues, terminé la llamada diciendo que esta era la última vez que iba a hablar con ella. Después de eso, llamé al Banco Popular e hice una reclamación con el banco…
>
> P: Y cuando habló con Francheska, ¿qué ella le dijo?
>
> R: Que eso era un error. Que puso… que hizo un cargo en el Paypal que no era, que eso es un error del banco. "Por favor, ¿de qué tú estás hablando?", o todo una… tirar bombas de humo. Como que: "¿De qué tú estás hablando? Tú no entiendes eso", y yo: "Pero, ¿cómo va a ser?, si yo tengo aquí viajes de Disney", diciéndomelo.
>
> […]
>
> R: Perdone. Entonces, que sí, básicamente que era un error, que era un error del banco que se podía aclarar. Yo le dije: "imposible". Entonces, ahí pues, llamé al Banco Popular y reclamé con el banco.[5]

Además, en juicio negó haber autorizado las transacciones objeto del presente pleito y testificó que la única persona con *token* para manejar el *General Ledger* durante el periodo de 2017-2018 era la Sra. López Quiñones.[6]

Es norma conocida que en ausencia de pasión, prejuicio, parcialidad o error manifiesto no intervendremos con la apreciación de la prueba que el tribunal de instancia tuvo a bien realizar. No existe nada en el expediente que tuvimos ante nosotros que nos lleve a concluir que en el presente caso el TPI incurrió en pasión, prejuicio, parcialidad o error manifiesto al evaluar los testimonios de los testigos de cargo. Recordemos que las

---

[5] TPO, pestaña 3, págs. 84-85.
[6] TPO, pestaña 3, pág. 87.

"contradicciones en las declaraciones de un testigo, eso de por sí solo, no justifica que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad más allá de duda razonable". *Pueblo v. Ramos Álvarez*, *supra*, pág. 317. Así, luego de un análisis de los testimonios desfilados, resolvemos que en el presente caso el TPI no cometió error. El perjudicado testificó que no había llegado a ningún acuerdo con la apelante, aunque esta alegó que ambos tenían un acuerdo verbal donde le correspondía el 15% del cobro de las cuentas de unos clientes de la compañía. De igual manera el Sr. López Matos negó en juicio haber autorizado las transacciones realizadas que dieron pie a las acusaciones, aunque la Sra. López Quiñones alegó este las autorizó mediante llamada telefónica. El hecho de que esta las haya realizado o no, no estaba en cuestión. Por lo que el tribunal, en el ejercicio de su discreción, adjudicó credibilidad y esto constituyó que se cumplimentara con los elementos del delito. A consecuencia de ello, el caso quedó debidamente probado.

**IV**

Por todo lo anterior, nos resulta forzoso confirmar la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones